John W. BLASECKI, Jr., et al., Appellants,

v.

CITY OF DURHAM, NORTH CAROLINA, et al., Appellees.

No. 71–1615.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1971.

Decided March 2, 1972.

Norman B. Smith, Greensboro, N. C. (Smith & Patterson, Greensboro, N. C., on brief), for appellants.

Claude V. Jones, Durham, N. C., for appellees.

Before BOREMAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal by plaintiffs, citizens and residents of the City of Durham, North Carolina, from a decision of the District Court for the Middle District of North Carolina holding constitutional an ordinance of the City of Durham which prohibits more than 50 people from assembling or congregating at Five Points Park. We affirm.

Five Points Park lies between Main Street and Chapel Hill Street near the center of downtown Durham. It is owned by the City of Durham. It is a new city park located on the site of an old wedge-shaped building torn down in 1967. The park is roughly triangular in shape with a total area of 4,260 square feet, which does not include a strip around its edge constituting space equal to that normally allotted for a sidewalk. The total unobstructed area in the park, excluding seats, trees, lights, etc., is 2,604 square feet.

From the time of its construction in 1967, four organized assemblages of people are known to have used the park. Two were disruptive requiring police intervention and two were peaceful. On the night of February 15, 1968, some 300 people met in the park and burned a casket as a symbol of protest against grievances. Firemen were prevented from extinguishing the casket by members of the crowd, who locked arms around it, and a tree caught on fire. Members of the assembly broke a number of glass store windows near the park. The damage to the park itself included burned trees (ignited by the casket), broken water sprinkler heads, and torn shrubbery.

The other disruptive demonstration occurred on the night of March 11, 1969. One store window was broken and shrubbery and sprinkler heads in the park were damaged.

On March 24, 1969, the Durham City Council adopted the ordinance which the plaintiffs challenge. It reads as follows:

WHEREAS, Five Points Park is not designed for or large enough in usable area to accommodate the congregation of large crowds of people at any one time; and

WHEREAS, said Five Points Park is located at the oblique intersection of Main and Chapel Hill Streets, which is one of the most used and congested areas for both pedestrian and vehicular traffic in all of the downtown area of the City of Durham; and

WHEREAS, it is especially important and necessary in the preservation of public safety, health and welfare that the streets in the Five Points area be kept open at all times for the unobstructed and unimpeded passage thereon of police and fire vehicles, ambulances, and other such public instrumentalities, and also in the public interest for the normal and orderly movement of traffic thereon; and

WHEREAS, the congregating of more than 50 people at the same time at Five Points Park overtaxes the reasonable capacity of said Park and causes the overflow of persons in excess of that number to occupy the abutting sidewalks and streets, thus causing such sidewalks and streets to become obstructed, with the result of impeding and interfering with the orderly use thereof by others having a lawful right to use the same; and

WHEREAS, this Council finds and determines that it is reasonably necessary in the promotion of the public safety, health, convenience and welfare that the use of said Five Points Park be regulated by prohibiting the assembling or congregating thereon of more than 50 persons at any one time; now, therefore,

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DURHAM:

Section 1. The assembling or congregating of more than 50 persons at any one time at Five Points Park is hereby prohibited and made unlawful.

Section 2. The law enforcement officers are hereby authorized and empowered to enforce this ordinance to the end that all persons at said Park in excess of the number permitted under the terms hereof will be required to leave the same.

Section 3. In the event an assembly or congregation present in said Park exceeds the maximum number as provided and made unlawful by Section 1 hereof, and the request of a law enforcement officer that the number of persons authorized to continue in the assembly in said Park be reduced to the permitted number and all in excess of such permitted number promptly leave, is refused or not carried out, then and in such event such law enforcement officer or officers shall advise the persons assembled that such assembly is in violation of the law, and request that all persons present disperse and leave the Park voluntarily, and if any person shall fail or refuse to disperse and promptly leave said Park in obedience to said request he shall be guilty of a misdemeanor; and in addition, such law enforcement officers shall be authorized and empowered, in such case, to use such means as are reasonably necessary and lawfully permitted to disperse such assembly and remove such persons from said Park.

Section 4. Any person violating the provisions of this ordinance shall be guilty of a misdemeanor and, upon conviction, shall be punished as provided by the General Statutes for violation of a municipal ordinance.

Section 5. If any part or provision of this ordinance shall be declared unconstitutional or invalid by any Court of competent jurisdiction it is the legislative intent that all other parts and provisions hereof, except that expressly so declared, shall remain in force. Section 6. This ordinance shall be in full force and effect from and after its passage.

For nearly a year there were apparently no efforts to assemble in Five Points Park, but on February 25, 1970, plaintiff Blasecki, Chairman of the Dur-

ham Alliance, wrote to the Durham Chief of Police, defendant W. W. Pleas- ants, requesting a permit to conduct a rally in Five Points Park.[1]   When per-

1. The following is the text of the correspondence between plaintiff Blasecki and defendant Pleasants:

> February 25, 1970
> Chief W. W. Pleasants
> Durham City Police Department
> 314 North Mangum Street
> Durham, North Carolina
> Dear Chief Pleasants:

> On behalf of the Durham Alliance, an organization dedicated to the promotion of justice for all under law, I would like to inform you that it is our intention to hold a march and rally on Saturday, April 4, 1970, at 2 o'clock P.M., for the purpose of protesting the increasing abuse of civil liberties in this nation.  Our tentative plan is to assemble at East Parrish and Roxboro Streets, proceeding from that point to Main Street and then west on Main Street to a rally in Five Points Park. It is anticipated that the rally will draw about 200 people.

> Please consider this letter an application for a permit to hold the above mentioned events.  We would appreciate having such permit by March 21, 1970.
> Very truly yours,
> J. W. Blasecki, Jr., *Chairman*
> Durham Alliance

> March 2, 1970
> Mr. J. W. Blasecki, Jr.
> Durham Alliance
> P. O. Box 2990
> Duke Hospital
> Durham, North Carolina

> Dear Mr. Blasecki:

> In answer to your letter of February 25, 1970 in regards to the proposed rally on Saturday, April 4, 1970 I would like to state the following:

> If your intentions are for your group to march or walk in the street as a parade I cannot issue you a permit. The policy of the Durham City Council prohibits any parade on Saturdays that are not completed by 11 A.M. unless special permission is granted by the City Council.  To have a parade after 11 A.M. on Saturday you would have to go before the City Council and get special permission.

> If your intentions are for your group to march or walk down the sidewalk from Parrish Street to Five Points there is no restrictions on this type of march so long as the laws and ordinances dealing with the use of the public streets are not violated.  This in part would mean that the marchers would not be over two abreast and that they would not block or utilize over half of the sidewalk so that other people desiring to use the sidewalk could do so, and also that the marchers would abide by the traffic lights as anyone else would do who are using the public streets and sidewalks.

> I must also remind you of an ordinance regulating the use of the Five Points Park.  The ordinance prohibits the assembly of over fifty persons in the park and from your anticipated number you would have entirely too many people congregated in this area.  We cannot permit the streets and sidewalks to be used for assembly.

> I am attaching a copy of the ordinance with reference to the use of the Five Points Park.  Be sure to advise me as to your intentions on this matter.
> Sincerely,
> W. W. Pleasants, Chief of Police.

> March 16, 1970
> Chief W. W. Pleasants
> Durham City Police Department
> P. O. Box 649
> Durham, North Carolina 27702

> Dear Chief Pleasants:
> Thank you for your letter of March 2, 1970.  This is to notify you that I have changed the date of our rally to Friday, May 1, 1970, at the same time.  I do not anticipate that any of the laws or ordinances dealing with the use of public streets and sidewalks will be violated by the marchers.

> All other conditions with regard to assembly, march route, rally site and anticipated number of persons participating remain the same as set forth in my letter of February 25, 1970.  I would like the permit for these events to be granted on that basis and would appreciate your reply by April 1, 1970.
> Very truly yours,
> J. W. Blasecki, Jr., *Chairman*
> Durham Alliance

> March 23, 1970
> Mr. J. W. Blasecki, Jr.
> Durham Alliance
> P. O. Box 2990
> Duke Hospital
> Durham, North Carolina

> Dear Mr. Blasecki:
> Re:  Rally Friday May 1, 1970
> I understand the route that you want to take and the time but you have not made it clear if you are requesting a parade

mission was denied (as to assembling more than 50 persons) the rally was called off and this class action instituted.

I

The plaintiffs contend that this ordinance violates their freedom of speech and right of assembly in contravention of the First Amendment because, by limiting the number of people who can assemble in Five Points Park to 50, the ordinance, "in the guise of regulating the use of the park, purportedly in the interest of public order and convenience has the effect of abridging and denying these constitutional entitlements."

It is clear that by limiting the number of people who can assemble in Five Points Park, the City of Durham has restricted freedom of speech and assembly of these plaintiffs and their class. It is equally clear that "[t]he rights of free speech and assembly, while fundamental in our democractic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place at any time." Cox v. Louisiana, 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965).

We agree with plaintiffs that whenever the state restricts the right of assembly its action is to be reviewed without the presumption of constitutionality which is accorded legislative judgments in less crucial areas. United States v. Congress of Industrial Organizations, 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948). Not only is there no presumption, the constitutional standard is different. It is not enough that legislation may be rationally related to a legitimate state purpose; the state must have a compelling interest in the subject matter to justify abridgment, and the scope of the abridgment itself must not be greater than reasonably necessary to serve the state interest. Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945).

We have no difficulty with the first ingredient. Destruction of property, both public and private, had occurred on two out of four occasions when the park had been used for public assembly. The state's interest in the protection of

permit whereby you would use a portion of the public street or if your group is going to march down the sidewalk. If you wish to parade in the street you will have to have a permit and the parade will have to be over by 3 P.M. If you are going to march down the sidewalk you do not have to have a permit and there is no specific time that the march has to be concluded. You do not have to have a permit to assemble at Five Points, but be sure that there are not over 50 persons assembled in the Five Points Park.

I need to know if you want a parade permit or not so that we can arrange for an escort to work traffic. If you are going to march down the sidewalk you will not need a motorized escort. Please advise me of your exact intentions in this matter.

Sincerely,
W. W. Pleasants, Chief of Police
April 29, 1970
Chief W. W. Pleasants
Durham City Police Department
P. O. Box 649
Durham, North Carolina 27702

Dear Chief Pleasants:
In reply to your previous letter, I would like to inform you that we have decided to cancel our protest march and rally scheduled for May 1, 1970. Considering our purpose, we feel that regardless of the peacefulness of our intent, the Five Points Ordinance, as written, definitely opens our group to the possibilities of violence and disruption from external sources. This would both negate our aim and endanger the lives of those in our group, which is neither our intent nor a risk which we desire to take. We also feel the aforementioned ordinance to be unconstitutional, and to be so vaguely written as to make enforcement either impossible or purely arbitrary.

For these reasons we are instituting action in Federal District Court to enjoin the City of Durham from enforcing said ordinance. We hope to reschedule our march and rally at such later date that the situation has been duly rectified.

Very truly yours,
J. W. Blasecki, Jr., *Chairman*
Durham Alliance

property is a compelling one. So also is its interest that there will not be prolonged and uncontrolled congestion of main downtown arteries of vehicular and pedestrian traffic. Five Points is to Durham what Times Square is to New York. Prolonged and uncontrolled blockage of traffic at such a point can paralyze a city. See Cox v. Louisiana, supra, 379 U.S. at 554, 85 S.Ct. at 464, where the Court said, "Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly." This is not a case of abridgment of the privilege of a citizen to use the streets and parks for political discussions "in the guise of regulation. . . ." Haque v. Committee for Industrial Organization, 307 U.S. 496, 515–516, 59 S. Ct. 954, 964, 83 L.Ed. 1423 (1939). Here the problem is fully documented by the record which supports the inference that this ordinance was enacted to keep public order in an extremely congested downtown area.[2] The city has never required a permit to use the park, and the correspondence between plaintiff Blasecki and defendant Pleasants indicates a helpful, cooperative attitude and a willingness to assist plaintiffs in every way short of violation of the ordinance.[3]

II

The harder problem is whether, assuming a compelling state interest in the enactment of the ordinance, it sweeps

overbroadly and cuts unnecessarily deep into First Amendment freedom.

Plaintiffs advance two arguments for the proposition that the number limitation (50 persons) is an unconstitutional limitation on the freedom of speech and right of assembly. They claim that statistical evidence shows the park can physically accommodate more than 50 people and that an ordinance which limits the number to 50 unnecessarily is unconstitutional. The second argument is that the ordinance is unnecessary because the State of North Carolina and the City of Durham already have laws and ordinances which prohibit all harmful conduct which could conceivably result from a public assembly.

We think that, if the City of Durham is permitted to set any limitation at all upon the number of people that may gather in Five Points Park, it is entitled to consider factors other than the physical size of the area and the number of people it will hold standing up if no one shoves, pushes, or locks arms. The center city location of the park, traffic conditions, the location and size of other parks and places available for public assembly and the relative increase in the possibility of danger to the public and property as the size of the crowd increases are but a few of the many factors which would enter into such a determination.[4] Perhaps the most significant factor of all would be the normal use of Five Points Park *without* any scheduled rally, *i. e.*, how many peo-

2. In addition to the normal pedestrian traffic which would be found in any downtown area, the Five Points Park is utilized by many people who wait for buses since the Five Points Park area is a major bus stop in the City of Durham.

3. See note 1 *supra*.

4. In A Quaker Action Group v. Hickel, 137 U.S.App.D.C. 176, 421 F.2d 1111 (D.C. Cir. 1969), the fact that statistical evidence showed the south sidewalk of Pennsylvania Avenue could contain far more than the 100 persons limit, and Lafayette Park could contain far more than the 500 persons limit placed on demonstrations in each place by the National Park Service,

was taken into consideration in determining that the trial judge had not abused his discretion by permitting demonstrations larger than that permitted by the regulations. In that case, however, the disparity between that permitted and that arguably possible was far greater than in the case before us. In addition, probably a more important factor in granting the injunction against the enforcement of these regulations was the evidence that the National Park Service had arbitrarily denied permits to groups whose size did not exceed the regulation limits. Both the requiring of permits and capricious enforcement are absent from the case before us.

ple are there waiting for rides, buses, or using the park as a concourse or pausing in the center of the city. Police estimates of the number of people they could handle are likewise relevant but not determinative.[5]

The plaintiffs seem to realize that if a line is to be drawn at all with regard to numbers, it must be drawn somewhere, so their second argument is that *no* line may constitutionally be drawn. By arguing that the ordinance is overbroad because the state already has laws by which to punish any harmful *conduct which may arise from a public* assembly, the plaintiffs urge us to accept the proposition that the state may not constitutionally set a limit on the number of people in a public place without regard to what they may be doing. We disagree. Public assemblies are not accorded absolute immunity from prior restraint accorded to freedom of the press nor as high a degree of protection as that afforded to speech unaccompanied by concurrent action. For the reasons stated by the Court in Cox v. Louisiana, 379 U.S. 559, 563–566, 85 S.Ct. 453, 13 L.Ed.2d 471 (1964), we *think that it is constitutionally permissi-*ble for the City of Durham to place a reasonable limit on the number of people who can assemble in Five Points Park. In finding that 50 was a not unreasonable limitation we think the district judge on the whole record was not clearly erroneous.

### III

Plaintiffs also contend the ordinance is void for vagueness. Their argument is that the ordinance, "prohibits the congregation of more than 50 persons at any one time in the park; provides that a law enforcement officer may request all in excess of 50 persons to leave the park promptly; provides that if the 'excess' persons do not leave at that time, the law enforcement officer

must announce that the assembly is unlawful, and must request all persons to disperse and leave the park; and makes it a misdemeanor for any person to refuse to leave the park in obedience to the order." Plaintiffs urge that the ordinance is unconstitutionally vague because it fails to define which people constitute the "excess." While it might be possible to interpret this ordinance as imposing criminal sanctions upon the "excess," it is elementary that if more than one interpretation is possible, the one which will permit upholding the constitutionality of the statute should be chosen. United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). It is also elementary that a United States court cannot interpret authoritatively and finally a state criminal ordinance. We think it inappropriate that we should attempt interpretation because one of the special circumstances making abstention appropriate "is the susceptibility of a state statute of a construction by the state courts that would avoid or modify the constitutional question." Zwickler v. Koota, 389 U.S. 241, 249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967).

Although we decline to interpret, it is obvious, for example, that the 50 person limitation in the ordinance might be held to contemplate people who have the intent to be gathered in the Five Points Park in some organized manner as compared to people who are waiting for buses or walking through the park. A state court might also reasonably hold that no person can be arrested and charged with violation of this ordinance until the police, following the procedure outlined in the ordinance, have ordered the entire assembly, not just the "excess," to disperse and the person fails to do so. From the standpoint of protecting First Amendment rights, the provision in the ordinance calling for the excess to leave before the

---

5. The only evidence regarding capacity of the park is that defendant Pleasants told the City Council the police could handle 50 to 100 people, but it is unclear whether he was speaking of the park alone or of the entire Five Points area.

assembly is required to disperse would be a more acceptable alternative to forcing the assembly to disperse immediately upon its growing larger than 50 people. While there may be some doubt in each individual's mind as to whether he is part of the "excess" and should leave, we do not think this possible uncertainty would offend due process to the extent that the entire ordinance is void in view of the fact that no criminal penalty appears to attach to the failure to leave at this point.

The judgment of the district court declaring the ordinance constitutional will be

Affirmed.