**In re David A. CRABTREE a/k/a West Knoxville Investment Company, Inc., Debtor.**

**Bankruptcy No. 3–83–01116.**

United States Bankruptcy Court, E.D. Tennessee.

Oct. 31, 1984.

Cadwalader, Wickersham & Taft, Murray Drabkin, Mark C. Ellenberg, Washington, D.C., Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for Trustee.

Morton, Lewis, King & Krieg, John K. King, Mary M. Farmer, Knoxville, Tenn., Barbara J. Lukes, Knoxville, Tenn., Staff Counsel, for Federal Deposit Ins. Corp.

### MEMORANDUM ON APPLICATIONS FOR COMPENSATION BY ATTORNEYS FOR THE TRUSTEE

CLIVE W. BARE, Bankruptcy Judge.

Two law firms representing the trustee, Cadwalader, Wickersham & Taft (Cadwalader) and Walker & Walker, P.C. (Walker), seek approval of interim compensation and reimbursement of expenses, 11 U.S.C.A. § 331 (1979). Notice required by Bankruptcy Rule 2002(a)(7) has been given. The Federal Deposit Insurance Corporation (FDIC), a major creditor, has objected to both applications.

### I

To evaluate the services performed by the Cadwalader and Walker law firms a brief narrative is necessary. An involuntary petition against the debtor was sustained on August 22, 1983, when an order for relief under chapter 7 was entered. The debtor tardily filed a statement of financial affairs and schedules which provided no information whatsoever. His only response to questions in the statement and schedules was: "Debtor, upon advice of counsel, asserts his rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and respectfully refuses to answer questions on the grounds that the answers might tend to incriminate him." Debtor likewise declined to answer questions about his financial affairs at the Code § 341(a) meeting of creditors. Hence, the trustee and his attorneys were confronted with the task of identifying and locating assets of the estate without any voluntary cooperation by the debtor, whose financial affairs presented a labyrinth involving several dozen corporations, partnerships, and trusts.

In disregard of his duties under 11 U.S.C.A. § 521 (1979), the debtor contumaciously withheld both recorded information related to property of the estate and assets of the estate. Entry of turnover orders and hearings on the trustee's motion to hold the debtor in contempt, preceded any significant surrender by the debtor of property of the estate. Following a hearing on the trustee's second contempt motion, the court imposed a $10,000.00 fine against the debtor and further ordered that he surrender himself to the United States Marshal for this district, to remain in custody until he purged himself of contempt for orders of the court and his statutory duties under the Bankruptcy Code. Currently, the debtor is serving a 15-year sentence pursuant to his plea of guilty to a 4-count indictment charging violations of 18 U.S.C.A. § 152 (Supp.1984) (concealment of assets from bankruptcy trustee).

### II

Section 331 of Title 11 of the United States Code enacts in relevant part:

[A]ny professional person employed under section 327 ... of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date....

11 U.S.C.A. § 331 (1979).

Order No. 26 in this case entered on December 14, 1983, authorized monthly applications for interim compensation. This or-

der, vacated on August 17, 1984, directed the trustee, absent objection on his part, to promptly pay 75% of the interim fee requested and 100% of the expenses sought. Order No. 26 further provided for quarterly notice to parties in interest of all applications for interim compensation, an opportunity for parties in interest to object, and review by the court in the absence of objections or a hearing on any objection timely filed.

 Reasonable compensation for professionals employed by a bankruptcy trustee must be ascertained on the basis of the nature, the extent, and the value of such services, the time spent in performance of the services, and the cost of comparable nonbankruptcy services. 11 U.S.C.A. § 330 (1979). In fixing compensation to professionals this court favors the lodestar approach, multiplication of a reasonable hourly rate by the hours reasonably expended in performance of actual and necessary services. A reasonable hourly rate should be determined on the basis of the amount involved, customary fees, the level of skill required, reputation of the applicant, time limitations, whether the fee is fixed or contingent, and the case's undesirable aspects, if any. *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (Bankr. 1st Cir.1982). Factors affecting the time element include the degree of opposition and the difficulty or novelty of the issues. *Id.* Also, any duplicative hours should be excluded.

### Cadwalader

The following applications for interim compensation and reimbursement of expenses are before the court:

| Date Filed | Period of Service [1] | Hours | Compensation Requested | Interim Compensation Paid Under Order No. 26 | Expenses |
|---|---|---|---|---|---|
| 3/5/84 | 9/28/83–2/29/84 | 2,555.53 | $323,558.10 | $242,668.58 | $29,862.88 |
| 4/20/84 | 3/1–3/31 | 1,151.37 [2] | 149,967.74 | 112,475.80 | 13,173.89 |
| 5/21/84 | 4/1–4/30 | 650.41 | 70,354.29 | 52,765.72 | 13,878.94 |
| 6/20/84 | 5/1–5/31 | 830.67 | 92,468.77 | 69,351.58 | 11,191.56 |
| 7/20/84 | 6/1–6/30 | 858.94 | 91,179.75 | 68,384.81 | 9,643.42 |
| Total | | 6,046.92 | $727,528.65 | $545,646.49 | $77,750.69 [3] |

 The services performed are particularly described in exhibits to each of Cadwalader's applications. Generally, these services include efforts to recover assets of the estate, a process which has required several Bankruptcy Rule 2004 examinations; [4] prosecution of contempt proceedings to compel turnover of recorded information and surrender of assets; participation in a trial resulting in denial of debtor's discharge; and representation of the trustee in numerous negotiations and proceedings related to property of the estate. A considerable degree of professional skill has been demanded, and demonstrated, in this case. The caliber of service rendered

1. Some services performed during one period are reported in a different period due to delays in data processing.

2. This figure reflects Cadwalader's amendment filed April 25, 1984, subtracting 12.17 hours of attorney services. The compensation requested has also been correspondingly reduced.

3. This amount includes charges for word processing totaling $8,009.00. Cadwalader has withdrawn its request for reimbursement of these charges.

4. At the September 20, 1984, hearing on the application for compensation, Francis Norwood, the original trustee, testified that most of the estate's assets were held in trusteeships or by entities not clearly associated with the debtor.

by Cadwalader, a firm of national repute with extensive experience in bankruptcy cases, has been exceptional.[5] Substantial sums of money are involved; claims filed against the estate exceed $100,000,000.00.[6] Swift action by Cadwalader attorneys was necessary in several instances, sometimes in other jurisdictions. Significantly, when Cadwalader was retained by the trustee, payment of attorney fees was wholly contingent upon recovery of property of the estate. Indeed, nearly five months after entry of the order for relief only a few assets (a condominium, title to a Ferrari automobile, two watches, some stock certificates and promissory notes, a yacht, and $10,000.00 in cash) had been recovered. According to D. Broward Craig, the successor trustee, Cadwalader's services have been crucial to the recovery to date of cash and other assets having a total value in excess of $9,000,000.00. These factors, combined with the fact that no law firm in the Knoxville area could have provided the services required in this case, persuade the court that the customary fee rates of Cadwalader represent appropriate hourly rates to compute the lodestar. (These hourly rates range from $170.00 to $235.00 for services of a partner, $60.00 to $150.00 for an associate's time, and $15.00 to $60.00 for nonprofessional services.)

Although FDIC does not object to Cadwalader's customary rates,[7] it does contend that the hours billed are excessive. FDIC maintains there has been some duplicity of services by attorneys in the Cadwalader firm; that charges for the organization of documents are excessive; and that time

expended preparing fee applications should not be billed to the estate.[8]

Attempting to satisfy some of the FDIC's objections, Cadwalader has proposed to reduce its compensation request by deducting: (1) $13,184.00 charged for 96.31 hours of travel time; (2) $4,000.00 for charges related to document management; and (3) $6,527.50 in charges attributable to preparation of application for compensation. Thus, Cadwalader proposes to reduce its compensation request, exclusive of expenses, by a total of $23,711.50.

After the $4,000.00 reduction proposed by Cadwalader, charges attributable to document management for an 8-month period still exceed $14,000.00. However, based on Cadwalader's representation that these charges relate to classification and cross-referencing, not merely filing, and that documents in the debtor's case occupy 40 linear feet of its file space, the court declines to further reduce these charges.

It is the opinion of this court that reasonable compensation should be allowed for the preparation of fee applications. Cadwalader's proposal to reduce its fee request by $6,527.50 for charges related to preparing applications for compensation is acceptable. Charges related to the applications for compensation presently before the court are allowed in an amount equaling approximately three percent of the total fees and expenses requested.

After review of the exhibits describing Cadwalader's services, the court finds that the hours charged for seven entries resulting in charges of $1,422.85 are excessive.[9]

**5.** Cadwalader has offices in Florida, New York City, and Washington, D.C.

**6.** According to the debtor's second amended schedules filed July 30, 1984, as of August 22, 1983 (date of the entry of the order for relief), the value of the assets of the estate was $18,207,-085.96. Liabilities reportedly totaled $46,558,-496.40.

**7.** At the September 20, 1984, hearing counsel for the FDIC stated that no objection was interposed to the rates charged by the attorneys for the trustee.

**8.** Additional objections to the hours billed question the cost effectiveness of multiple attorney involvement and the effectiveness of attorney time where individual attorneys worked in excess of 12 hours per day. Also, FDIC charges that a de minimis amount of time (less than 7 hours) representing work more appropriately performed by the trustee has been billed by an attorney for Cadwalader. These objections are all overruled.

**9.** The entries in question are:

Compensation is allowed for these charges at the rate of forty percent of the amount requested, or $569.14. Charges of $2,762.50 for nine entries for research are presently disallowed because it is not apparent that these services were necessary.[10] However, the court may subsequently allow these charges if Cadwalader further describes its services and avers the necessity thereof. Further, the court finds that the $536.50 charge for the services of Carolyn Killebrew in connection with the Erck deposition on December 7, 1983, is unnecessary.[11] Also, a charge of $242.00 for services performed by J.A. Casey on March 29, 1984, is included in two different applications.[12] Accordingly, the sum of $699,422.44 represents reasonable compensation for Cadwalader's services between September 28, 1983, and June 30, 1984.[13]

■ Cadwalader seeks approval of expenses totaling $69,741.69.[14] FDIC objects to expense charges for "business lunches, overtime meals, overtime, lodging and travel" due to a lack of specificity. The objection has merit insofar as the lodging and travel expenses are concerned. Expense reports should reflect the city in which a lodging expense is incurred, duration of stay, and the number of rooms required if an entry involves more than one employee. Also, travel entries should show both the point of departure and the traveler's destination. Without such information it is impossible to determine the necessity of the expense. Hence, the court reserves decision with respect to approval of the expense reimbursement requested. Within thirty days from entry of the order accompanying this memorandum a supplementary expense report providing detailed information about lodging and intercity travel expenses may be filed by Cadwalader.

### Walker

Compensation and reimbursement of expenses is requested as follows:

| Date | Attorney | Hours | Amount |
|------|----------|-------|--------|
| 1/12 | Giesse | 8.0 | $400.00 |
| 2/13 | Wahrman | 2.17 | $217.00 |
| 2/14 | Wahrman | 3.34 | $334.00 |
| 2/15 | Wahrman | 2.67 | $267.00 |
| 6/21 | Wynn | 0.50 | $ 27.50 |

Considering the experience of the members of the Walker firm, the court is concerned about the necessity of Wahrman's research relative to Tennessee motor vehicle title law.

| Date | Attorney | Hours | Amount |
|------|----------|-------|--------|
| 12/28 | Lehman | 0.17 | $ 17.85 |
| 12/30 | Lehman | 0.50 | $ 52.50 |
| 1/9 | Killebrew | 2.50 | $145.00 |
| 1/13 | Lehman | 2.50 | $262.50 |
| 1/18 | Lehman | 5.50 | $577.50 |
| 2/10 | Lehman | 1.00 | $105.00 |
| 6/14 | Lehman | 2.50 | $262.50 |

**10.** The nine entries are:

| Date | Attorney | Hours | Amount |
|------|----------|-------|--------|
| 1/6 | Giesse | 8.0 | $400.00 |
| 1/9 | Giesse | 6.34 | $317.00 |
| 1/10 | Giesse | 8.0 | $400.00 |
| 1/11 | Giesse | 8.0 | $400.00 |

**11.** Two other attorneys from Cadwalader, Mark Ellenberg and Charles Rowan, attended Erck's deposition.

**12.** See the second and third applications for interim compensation, respectively, filed on April 20 and May 21, 1984.

**13.** Since $545,646.49, exclusive of expenses, has previously been paid, Cadwalader is entitled to additional compensation from the estate of $153,775.95.

**14.** See note 3, *supra.*

| Date Filed | Period of Service | Hours | Compensation Requested | Interim Compensation Paid Under Order No. 26 | Expenses |
|---|---|---|---|---|---|
| 3/1/84 | 10/27/83–1/31/84 | 203.3 | $26,800.00 | $20,100.00 [15] | $2,770.17 |
| 3/7/84 | 2/1–2/29 | 112.0 [16] | 15,020.00 | 11,565.00 | 1,676.35 |
| 4/6/84 | 3/1–3/31 | 103.4 | 13,840.00 | 10,380.00 | 2,026.57 |
| 5/16/84 | 4/1–4/30 | 87.5 | 12,030.00 | 9,022.54 | 530.24 |
| 7/24/84 | 5/1–5/31 | 82.1 | 10,393.00 | 7,794.75 | 1,216.05 |
| 7/20/84 | 6/1–6/30 | 33.5 | 3,738.00 | 2,803.50 | 546.29 |
| Total | | 621.8 | $81,821.00 [17] | $61,665.79 | $8,765.67 |

██ The role of the Walker firm in the debtor's case has been an active one. Attorneys for the firm have participated in deposition proceedings and frequently appeared in court in adversary proceedings commenced to recover property of the estate. A high degree of skill has been required to efficiently perform the services rendered by Walker. Time constraints necessitated prompt action in connection with Glade Springs, Inc.[18] and other matters. The customary hourly fees charged by the firm, which enjoys a very favorable professional reputation, are $150.00 for John A. Walker, Jr. and $100.00 for both Mary Walker, and Douglas Wickham. Although these rates exceed the prevailing rate in this market area, the firm does have expertise in the areas of bankruptcy and commercial law. More importantly, Walker faced the same risk of nonpayment as Cadwalader when it agreed to represent the trustee. Accordingly, in this particular case and these particular applications, the court accepts the customary rates of Walker as the appropriate hourly rates to compute the lodestar.[19]

FDIC also objects to the number of hours billed by Walker. The detailed description of services rendered by Walker reveals that on eight occasions two attorneys from the firm were present during either court proceedings or a § 341(a) meeting also attended by a Cadwalader attorney. There is no apparent benefit to the estate or justification for the attendance of more than one attorney from the Walker firm on any of the eight occasions. Consequently, a total of 21.5 of the hours charged by Mary Walker and Douglas Wickham were not necessary. Hence, the compensation allowed must be reduced by $2,150.00.[20]

15. The trustee's interim report filed on March 12, 1984, reflects a disbursement to Walker in the amount of $22,870.17, purportedly representing 75% of the compensation requested and 100% of the expenses incurred for the period between October 27, 1983, and January 31, 1984. In fact, the sum of 75% of the compensation requested and 100% of the expenses for the 3-month period is only $21,870.17. The court is relying, however, on the trustee's representation that the amount of his initial disbursement to Walker was $22,870.17.

16. This figure incorporates the September 20, 1984, amendment deducting 4.0 hours of time for Mary Walker's attendance at a hearing where John Walker and two attorneys from Cadwalader were also present. Since Mrs. Walker's attendance was not necessary the Walker firm has reduced its compensation request by $400.00. This reduction eliminates one of the specific objections by FDIC to the Walker application.

17. This sum includes $426.00 in charges for paralegal time billed at an hourly rate of $30.00.

18. Glade Springs, Inc. is a resort and real estate complex, in West Virginia, sold by the debtor's trustee for $5,600,000.00.

19. No objection to Walker's rates was interposed. See note 7, *supra*.

20. The entries involving duplicative charges and the time reduced are:

Also, there is no apparent benefit to the estate for the attendance of David Roberts, a paralegal, at a court hearing on May 29, 1984. The $15.00 charge for the service is likewise disallowed.

Because $61,665.79, exclusive of expense reimbursement, has previously been paid, Walker is entitled to further compensation of $17,990.21 from the estate. Additionally, expenses totaling $8,440.49 are approved as reasonable and necessary. 11 U.S.C.A. § 330(a)(2) (1979).[21]

| Date | Attorney | Hours Disallowed |
|------|----------|------------------|
| 11/15/83 | Mary Walker | 2.0 |
| 1/28/84 | Mary Walker | 5.0 |
| 2/7/84 | Mary Walker | 2.0 |
| 2/17/84 | Mary Walker | 4.5 |
| 3/2/84 | Douglas Wickham | 3.0 |
| 4/6/84 | Douglas Wickham | 1.0 |
| 4/12/84 | Mary Walker | 3.0 |
| 4/20/84 | Mary Walker | 1.0 |

**21.** Although reimbursement for $325.18 in expenses is not presently approved, Walker shall have twenty days from entry of the order accompanying this memorandum to demonstrate, by affidavit or documentation, the necessity of the following expenses:

| Date Application Filed | Nature of Expense | Amount |
|------------------------|-------------------|--------|
| 3/7/84 | Client expense | $ 90.39 |
| 4/6/84 | Meals and miscellaneous | $126.14 |
| 5/16/84 | Miscellaneous | $ 13.00 |
| 7/24/84 | Miscellaneous expense (meals, etc.) | $ 95.65 |