**In re David A. CRABTREE, a/k/a West Knoxville Investment Company, Inc., Debtor.**

**Bankruptcy No. 3–83–01116.**

United States Bankruptcy Court, E.D. Tennessee.

Nov. 25, 1985.

Cadwalader, Wickersham & Taft, Murray Drabkin, Mark C. Ellenberg, Washington, D.C., Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for trustee,

Morton, Lewis, King & Krieg, John K. King, Mary M. Farmer, Knoxville, Tenn., for Federal Deposit Ins. Corp.

Barbara J. Lukes, Staff Counsel, Knoxville, Tenn., for Federal Deposit Ins. Corp.

gg

CLIVE W. BARE, Bankruptcy Judge.

I

For its services during the four-month period between March 1 and June 30, 1985, Cadwalader asks for compensation of $254,447.90 plus reimbursement of its expenses of $21,678.49. The Walker firm requests compensation of $37,825.00 and reimbursement of expenses totaling $3,482.74 for services performed between April 1 and July 30, 1985.

The trustee's fifth interim report, filed September 9, 1985, reflects a cash balance of $3,617,507.80.[1] Additionally, numerous assets and claims have not been liquidated.

FDIC observes that Cadwalader and Walker will have received $1,620,845.27[2] if the pending applications are approved.[3] FDIC asks the court to compare the compensation awarded in this case with the allowances in the cases of C.H. Butcher, Jr. (Case No. 3–83–01008) and Jake Butcher (Case No. 3–83–01036), whose cases, according to FDIC, "are not grossly disproportionate"[4] to the debtor's. FDIC maintains the fees of Cadwalader and Walker equate to $3,376.00 per day if the pending applications are approved, whereas the trustees' per diem attorney fees in the C.H. Butcher, Jr. and Jake Butcher cases equate

to only $1,495.00 and $581.00 respectively.[5] FDIC notes the ratio of the attorney fees in the debtor's case to the cash currently on hand is substantially higher than in either of the Butcher cases.

In response, Cadwalader and Walker contend that focusing on the ratio of attorneys fees to the value of assets recovered and liquidated distorts their accomplishments because: (1) the prepetition value, based on personal financial statements, of the total assets of C.H. Butcher, Jr. ($105,307,-786.00) and Jake Butcher ($77,913,856.00) substantially exceeded the value of the debtor's assets ($18,911,499.00), and (2) in contrast to the debtor's contumacious conduct, sizeable assets of the Butcher estates were turned over to the trustee without litigation.[6] Cadwalader and Walker further contend, to date, they have recovered a far higher percentage of available assets than recovered in either of the Butcher cases and that the debtor's case is at a more advanced stage.

The FDIC's comparison omits any mention of the attorney time—a factor in fixing compensation under 11 U.S.C.A. § 330 (Supp.1985)—involved in each of the three cases. Further the customary rates of Cadwalader exceed those of the attorneys

---

1. The fifth interim report shows total receipts of $5,571,353.25 and disbursements totaling $1,953,845.45.

2. This figure does not include reimbursement of expenses.

3. The court has previously allowed interim compensation and reimbursement of expenses as follows:

| Date of Order | Compensation | | Expenses | |
| --- | --- | --- | --- | --- |
| | Cadwalader | Walker | Cadwalader | Walker |
| 10/31/84 | $ 699,422.44 | $ 79,656.00 | | $ 8,440.49 |
| 1/3/85 | 1,520.50 | | $ 68,441.72 | |
| 2/4/85 | 234,615.58 | 20,647.25 | 21,306.93 | 2,110.60 |
| 5/23/85 | 269,610.60 | 23,100.00 | 22,445.81 | 3,605.87 |
| TOTAL | $1,205,169.12 | $123,403.25 | $112,194.46 | $14,156.96 |

Future applications for compensation must state the payments previously received, in accordance with Bankruptcy Rule 2016(a).

4. Transcript of Proceedings of Sept. 9, 1985, at 39.

5. The FDIC computations are based on a five-day work week.

6. In a prior memorandum on applications for compensation by Cadwalader and Walker the court outlined the debtor's lack of cooperation in this case. *In re Crabtree,* 45 B.R. 463 (Bankr.

for the trustees in the Butcher cases.[7] More importantly, each bankruptcy case is unique. Accordingly, the comparison FDIC employs to deduce that the trustee's attorney fees in the debtor's case are excessive is not valid.

## II

FDIC raises several points in its objection. Initially, FDIC contends the applicants' statements are not sufficiently itemized to reflect the time spent performing a given service. As an example FDIC cites a March 19, 1985, narrative of services, requiring four (4) hours, performed by Mark Ellenberg of the Cadwalader firm:

> Review transcript of D. Broward Craig deposition re Knox Resorts; conference with Jerry Madden about details of proof for Knox Resorts trial; conference with Murray Drabkin, Jerry Madden and Hancock re Knox Resorts settlement; review incoming pleadings; conference with Jerry Madden re Druthers settlement and trial; conference with Jerry Madden and G. Shanks of FDIC re Knox Resort lease default; draft letter to Hancock re offer of judgment; draft letter to Hancock re insolvency proof; conference with Murray Drabkin re Merrill Lynch accounts and GNMA's.

This narrative and those of other Cadwalader and Walker attorneys, with exceptions noted hereinafter, sufficiently describe the services performed. While the services performed are "lumped" in some narratives the court is nonetheless able to evaluate whether the time billed is reasonable.

Next, FDIC argues that Cadwalader and Walker seek compensation for services which should have been performed by the trustee, such as: review of debtor's redirected mail; arranging for sale of property of the estate; analyzing bank statements to locate missing checks; responding to inquiries regarding maintenance of estate property; seeking a candidate to operate a motel in which the estate had an interest; and exploring investment options for the trustee. This objection is without merit.[8]

■ FDIC also argues that a substantial amount of time is billed for services attributable to a RICO suit filed by the liquidating trustee for Southern Industrial Banking Corporation (SIBC) against the debtor personally.[9] However, Cadwalader represents that the attorney for the SIBC liquidating trustee advised he would seek to enforce any judgment against the estate. Hence, the trustee's defense of the multimillion dollar RICO suit is understandable.

■ Further, FDIC contends the trustee's attorneys have inappropriately borne the burden of representation or taken responsibility for litigation when others should have borne or at least shared the responsibility and related expenses. Specifically, FDIC cites the Knox Cable matter, a complex dispute involving FDIC which was compromised, and a contested matter in the Glade Springs case (Case No. 3–83–01854) involving a letter of credit. See *In re Glade Springs, Inc.*, 47 B.R. 780 (Bankr.E.D.Tenn.1985). The debtor's estate had an important interest in each of these matters. Cadwalader and Walker did not assume undue responsibility in either matter.

## III

The remaining FDIC objections pertain to the Cadwalader application.

*Cadwalader*

The services performed by Cadwalader, highlighted by a $400,000.00 recovery in a post-trial settlement of an action to avoid a fraudulent transfer, are outlined in its application. Involving appearances in the dis-

---

E.D.Tenn.1984). Legal action has been required to obtain nearly every asset of the estate.

**7.** At no time has FDIC interposed an objection to the customary rates of Cadwalader.

**8.** However, the court does find that some services related to the sale of estate property do not

warrant compensation at Walker's customary rates.

**9.** See *DuVoisin v. Crabtree*, Adv.Proc. No. 3–85–0721 (March 8, 1985).

trict court and the circuit court of appeals in addition to numerous appearances before this court, these services were litigation intensive. The compensation requested, $254,447.90, consists of $235,012.24 billed for 1,627.11 hours of attorney time plus $19,435.66 for 412.5 hours of time logged by legal assistants. The average hourly rate for attorneys is $144.43; for legal assistants the average hourly rate is $47.12. The fee request is based on Cadwalader's customary rates, which have been accepted by the court in fixing interim compensation previously allowed.

The court finds the following services are insufficiently described:

| Date | Attorney | Time | Amount Billed |
|------|----------|------|---------------|
| 3/5/85 | S. R. Greene | 1.17 | $ 169.65 |
| 3/7/85 | S. R. Greene | 5.5 | 797.50 |
| 3/11/85 | S. R. Greene | 2.84 | 411.80 |
| 3/12/85 | S. R. Greene | 3.17 | 459.65 |
| 3/14/85 | S. R. Greene | 1.0 | 145.00 |
| 3/19/85 | S. R. Greene | 0.5 | 72.50 |
| 3/19/85 | S. L. Pine | 3.01 | 331.10 |
| 4/2/85 | A. C. Emery | 2.5 | 337.50 |
| 4/3/85 | A. C. Emery | 2.0 | 270.00 |
| 4/10/85 | S. R. Greene | 1.84 | 294.40 |
| 5/30/85 | M. C. Ellenberg | 0.34 | 61.20 |
| 6/27/85 | J. Anderson | 4.0 | 300.00 |
| | | | $3,650.30 [10] |

Further, the court finds the following charges excessive considering the nature of the service performed:

| Date | Attorney | Time | Amount Billed |
|------|----------|------|---------------|
| 3/22/85 | J. A. Madden | 9.0 | $1,440.00 |
| 5/16/85 | A. C. Emery | 6.0 | $ 810.00 |
| 5/16/85 | A. C. Emery | 0.34 | $ 45.90 |

In addition to the objections previously considered, FDIC contends an excessive amount of time is being spent, and billed, by attorneys in this case; charges for document control and management are excessive; and that there are instances of duplicate charges by Cadwalader attorneys.

Generally, the court disagrees with the FDIC contention that an excessive amount of time is being expended by Cadwalader in this case. However, the court finds two isolated instances where the time billed for the service appears excessive, resulting in a reduction of $290.00.[11]

■ The time billed related to document management, excluding preparation of trial exhibits, is approximately 135 hours. This equates to approximately ninety minutes per work day, assuming ninety work days during the 120-day period covered by the application. Considering the labyrinth of the debtor's financial affairs this amount of time for document management is not unreasonable.

The fee request should be reduced by the amount of $2,713.25 due to the following duplicate charges:

| Date | Attorney | Time | Amount Billed |
|------|----------|------|---------------|
| 4/25/85 | S. R. Greene | 0.17 | $27.20 |
| 5/20/85 | M. C. Ellenberg | 10.67 | $1,920.60 |
| 6/24/85 | A. C. Emery | 5.67 | $765.45 |

The amount allowed for these services is reduced to $750.00.

Considering the factors in Code § 330(a), after subtracting charges for services insufficiently described, duplicate charges, and excessive charges, Cadwalader is entitled to interim compensation of $246,248.45 for its services between March 1 and June 30, 1985. Reimbursement of expenses totaling $21,460.87 is allowed.[12]

---

**10.** The court will reconsider the allowability of these fees if Cadwalader supplements its application with the details related to these charges.

**11.** Both entries pertain to E.C. Rowan, whose customary hourly rate is $145.00. The court disallows charges for one hour spent on April 26, 1985, revising a brief 2004 motion and preparing a certificate of service. Also, one of the two hours billed for Rowan's services on May 31, 1985, to prepare a settlement motion in an adversary involving Union County Bank, is disallowed.

**12.** Postage charges of $217.62 are presently disallowed. The court will reconsider this disallowance if the expense does not involve routine postage charges.

*Walker*

During the period between April 1 and July 30, 1985, Walker has been involved in depositions, made appearances before this court and the district court, prepared motions and pleadings, and performed research. Additionally, Walker has performed numerous ministerial tasks, some related to the sale of estate property.

The $37,825.00 compensation request consists of 243.3 hours billed at $150.00 per hour for services rendered by John Walker plus 13.3 hours of services by Mary Walker billed at $100.00 per hour. The compensation request is based on Walker's customary hourly rates.

■ Applying the Code § 330(a) factors, compensation cannot be allowed in the full amount requested. Considering the nature and value of many of the ministerial, yet necessary, services performed by John Walker during the relevant period, compensation at the hourly rate of $150.00 exceeds "reasonable compensation." 11 U.S.C.A. § 330(a)(1) (Supp.1985).[13] Reducing the hourly rate for John Walker's services to $125.00, the court finds that $31,742.50 represents reasonable compensation for Walker's services between April 1 and July 30, 1985. Reimbursement of expenses totaling $3,482.74 is allowed.

13. These ministerial services include attendance at auction sales; conferring with auctioneers; conferring with bank officers; phone calls to arrange deposition and hearing dates; responding to information seekers; review of billing records; and sending or supervising the sending of notices. The dates on which such services were performed are:

| Month | Dates |
|---|---|
| April | 18, 19, 20, 24, and 29 |
| May | 7, 15, 23, 24, 29, and 30 |
| June | 4, 5, 14, 17, 18, 19, 20, and 25 |
| July | 12 and 29 |