**In re David A. CRABTREE a/k/a West Knoxville Investment Company, Inc., Debtor.**

**Bankruptcy No. 3–83–01116.**

United States Bankruptcy Court, E.D. Tennessee.

March 26, 1986.

See also, Bkrtcy., 56 B.R. 42.

Cadwalader, Wickersham & Taft, Mark C. Ellenberg, Washington, D.C., Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for trustee.

Dearborn & Ewing, Craig J. Donaldson, Nashville, Tenn., Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, William S. Lockett, Knoxville, Tenn., for Charles S. Liberis, Charles S. Liberis, P.A., and David L. Fleming.

## MEMORANDUM ON TRUSTEE'S MOTION FOR TAXATION OF COSTS AND EXPENSES

CLIVE W. BARE, Bankruptcy Judge.

D. Broward Craig, trustee of the debtor's estate, asks the court to tax costs and expenses, including attorney fees, incurred in obtaining, and defending on appeal, an order of contempt against Charles S. Liberis, P.A., Charles S. Liberis, and David L. Fleming (respondents). Respondents contend they should not be taxed with the trustee's costs and expenses because the trustee did not sustain any actual damage as a consequence of their contempt, which was immediately purged. Alternatively, respondents insist that the court should limit the trustee to recovery of only reasonable expenses and fees incurred in this court—thus excluding the expenses generated by respondents' appeals to the district court and the circuit court of appeals—as of March 6, 1984, when respondents purged themselves of contempt.

### I

On August 16, 1985, the trustee filed a motion to tax costs and expenses, including attorney fees, in the amount of $39,850.49 against the respondents. The trustee's motion is filed pursuant to Order No. 61, entered in this case on March 5, 1984, which recites in part:

> The Court further ORDERS that all costs and expenses including attorneys' fees, as allowed by this Court, incurred by the Crabtree and C.H. Butcher, Jr. estates in response to the actions taken by Liberis [1] subsequent to this Court's order issued from the bench on February 22, 1984, denying Florida Investment's motion for relief from the automatic stay, be taxed against Charles S. Liberis, Charles S. Liberis, P.A. and David L. Fleming, but not against Florida Investment and Leasing Company....

On February 21, 1984, as counsel for Florida Investment & Leasing Co. (FILCO), a chapter 11 debtor in the Northern District of Florida, respondents and Sharon Lee, local counsel for FILCO, filed a motion for ex parte relief from automatic stay and a separate motion for relief from automatic stay, seeking permission to proceed

---

1. In Order No. 61 "Liberis" is a collective reference for Charles S. Liberis, P.A., Charles S. Liberis, David L. Fleming, and Sharon Lee.

against the trustee in an adversary proceeding in the Bankruptcy Court for the Northern District of Florida. The object of the Florida adversary proceeding was to recover $1,700,000.00 in the custody of trustee Craig and the trustee for the estate of C.H. Butcher, Jr.;[2] FILCO also sought a restraining order prohibiting the two trustees from disbursing any portion of the $1,700,000.00. This court denied the motion for ex parte relief. Further, during a February 22, 1984, hearing on FILCO's motion for relief from stay, with Sharon Lee appearing on behalf of FILCO, the court stated that the proper procedure for challenging entitlement to the $1,700,000.00 would be for FILCO to file claims or adversary proceedings in this court.[3] Following the conclusion of the February 22, 1984, hearing, Sharon Lee notified Charles Liberis of the court's refusal to grant relief from the stay. Five hours later, respondents proceeded to, and did, obtain a restraining order, from the Bankruptcy Court for the Northern District of Florida, ordering trustee Craig and the trustee for the C.H. Butcher, Jr. estate to hold the $1,700,000.00 and refrain from disbursing any portion of said funds. When respondents refused to seek dissolution of the temporary restraining order, trustee Craig, joined by the trustee for the C.H. Butcher, Jr. estate, filed a motion for a show cause order seeking a finding of contempt. At the conclusion of a hearing on March 2, 1984, the court announced its finding that respondents had deliberately, illegally and unlawfully violated both this court's order and 11 U.S.C.A. § 362 (West 1979). On March 5, 1984, the court entered Order No. 61 memorializing the findings at the March 2, 1984, hearing. Paragraph 12 of Order No. 61 recites:

> The Court finds that there are no relevant facts in dispute. It finds that Florida Investment & Leasing Co., Inc., and its attorneys, Charles S. Liberis, Charles S. Liberis, P.A. and David L. Fleming

have engaged in unlawful, illegal, deliberate and intentional violations of the order of this Court entered February 22, 1984 and of the automatic stay under § 362 of the Bankruptcy Code. It finds that they have been and are in contempt of this Court.

Respondents appealed Order No. 61 to the district court, which affirmed this court's finding of civil contempt and dismissed the appeal. The district court's memorandum provides in part:

> Appellants clearly violated an order of the Tennessee bankruptcy court, which denied the motions for relief from the stay. Purposefully to avoid this order, appellants sought collateral relief from the Florida bankruptcy court. The proper course would have been for appellants to file in the Tennessee bankruptcy court a motion for reconsideration or to appeal the court's order.

*Liberis v. Craig,* Civ. No. 3–84–381, Memorandum at 4–5 (E.D.Tenn. Aug. 9, 1984).

Respondents appealed the district court's order to the circuit court of appeals, which affirmed the district court's ruling. The penultimate paragraph of the opinion of the Court of Appeals for the Sixth Circuit recites:

> Finally, appellants suggest that they legitimately and reasonably felt that the court in Florida could provide them with the same relief denied by the court in Tennessee because federal bankruptcy courts are individual courts and not part of a national system. We disagree. It is elementary that federal courts are part of a federal system and not individual entities free to ignore the rulings by other federal courts. Appellants, attorneys-at-law, know or should have known this as a matter of course. Given their positions as attorneys, *appellants can offer no justification for their actions.*

*Liberis v. Craig,* 767 F.2d 920, Opinion at 6 (6th Cir.1985) (emphasis added).

---

2. An involuntary petition was filed in this court against C.H. Butcher, Jr. on June 24, 1983. See Case No. 3–83–01008.

3. Order No. 57 denying FILCO's motions for relief from stay was entered February 23, 1984.

## II

■ An award of attorney's fees and expenses to a successful movant in a civil contempt proceeding may be appropriate. *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983). But respondents urge the court to deny the trustee's motion for taxation of costs and expenses because the $1,700,000.00 fund was not jeopardized by their actions and the trustee did not sustain any actual damage. Additionally, respondents note they immediately purged themselves of the contempt found by this court and insist that "the contemptuous conduct in this case arose from their good faith belief and reasoned decision, based upon their experience as attorneys and a thorough review of the law, that their actions did not violate any order of this Court or the automatic stay of 11 U.S.C. § 362."[4] Respondents maintain "that the willfulness inherent in the contemptuous act is a major consideration in determining whether attorney's fees should be awarded to the opposing party." *In re Federal Facilities Realty Trust*, 227 F.2d 657, 658 (7th Cir.1955).[5] Respondents contend their contemptuous acts were not willful and that any error on their part was rectified when the contempt was purged March 6, 1984, one day after entry of Order No. 61.

■ Respondents' argument wholly ignores this court's previous determination, recited in Order No. 61, that their contemptuous acts were "deliberate and intentional violations" of this court's order and the automatic stay. Further, their argument also ignores the observation by the court of appeals that there is "no justification" for respondents' contemptuous acts.

■ Contending that in any event the trustee should not recover for expenses incurred after their contempt was purged, respondents ask the court to deny recovery by the trustee of all his expenses incurred as a result of the appeals *by respondents* to the district court and the circuit court of appeals. Respondents' position is untenable.[6] Order No. 61 unequivocally requires respondents to pay all costs and expenses, including attorney fees, as allowed by this court, incurred by the trustee in response to actions taken by them subsequent to this court's order from the bench on February 22, 1984, denying relief from the automatic stay. Hence, the award of costs and expenses in this matter pursuant to Order No. 61, affirmed by both the district court and the circuit court of appeals, is a foregone conclusion.[7]

4. Memorandum in Opposition to Trustee's Motion to Tax Costs and Expenses at 6, filed February 25, 1986.

5. *Contra Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir.1985) (denial of fees in absence of willfulness denies full compensation to party proving contempt in many cases); *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir.1977) (willfulness of contempt irrelevant insofar as cost of prosecuting violation of court order and disallowance of those costs would reduce any benefit to successful movant).

6. *Nelson v. Steiner*, 279 F.2d 944, 948 (7th Cir. 1960), disallowing two taxpayers' attorney fees and costs incurred on appeal by their unsuccessful opponents of a judgment in favor of the taxpayers, is not controlling. Persuasive authority exists for the allowance of the trustee's appellate costs. See *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C.Cir.1985) (appellate expenses allowed pursuant to F.R.Civ.P. 11 to a nonparty witness who successfully opposed a contempt action but had to appeal to obtain an award of attorney fees and expenses) and *Tamari v. Bache & Co.*, 729 F.2d 469, 475 (7th Cir.1984) (requiring a party to bear appellate costs could substantially offset sanctions awarded pursuant to F.R.Civ.P. 37(b) and create a disincentive to seek sanctions, thus undermining the purpose for the rule). Respondents argue that *Westmoreland* and *Tamari* are distinguishable because the awards of attorney fees were based on express provisions of Federal Rules of Civil Procedure. Their argument overlooks the express provision of Order No. 61 authorizing recovery by the trustee for acts of respondents subsequent to February 22, 1984. Because the order of this court and a statute of Title 11 of the United States Code were violated, this court may assess the appellate expenses of the contempt litigation. *Schauffler v. United Ass'n of Journeymen & Apprentices of Plumbing*, 246 F.2d 867, 870 (3rd Cir.1957).

7. Respondents question the benefit to the estate of the actions taken by the trustee's attorneys subsequent to March 6, 1984, the date respondents purged themselves of contempt. Respondents' argument is frivolous. Clearly, the services rendered by the trustee's attorneys after March 6, 1984, benefit the estate by preserving

■ Only the question of the reasonableness of the award sought by the trustee is at issue. The trustee seeks $37,727.08 for 284.51 compensable hours of services, rendered by ten attorneys and five legal assistants, plus $2,123.41 in expenses.[8] Respondents assert that the time records submitted by the trustee's attorneys reflect duplications of services; that on one occasion the trustee was represented by four attorneys at a hearing before this court; that Mr. Ellenberg, a partner in the Cadwalader firm, spent nearly forty (40) hours working on a brief; that nearly twenty-eight (28) hours is billed for research by Mr. Mattos on the issue of whether respondents' actions violated the automatic stay; and that the trustee seeks $3,161.12 for 59.6 hours of services by paralegals in preparing the fee statement supporting his motion to tax costs and expenses.

The narrative of services reflects a two-hour office conference between Mr. Drabkin and Mr. Ellenberg on February 27, 1984, and a three-hour conference the following day among Messrs. Drabkin, Dichter, and Ellenberg. Further, more than forty hours were expended by these three attorneys in preparation for the March 2, 1984, show cause hearing before this court and the preliminary injunction hearing in Tallahassee. However, the court is not persuaded that their services were duplicative considering the gravity of the issues and the fact that appearances were necessary in two forums. Respondents mistakenly contend four attorneys appeared before this court on behalf of the trustee at the March 2, 1984, show cause hearing.

Three attorneys (Messrs. Drabkin, Walker[9] and Wickham) did attend the hearing on behalf of the trustee.[10] This court previously disallowed interim compensation for the services of one of those three attorneys.[11]

Respondents' objections to the time billed for research by Mr. Mattos and appellate brief preparation by Mr. Ellenberg have no merit. The narrative of services reflects that Mr. Mattos' research involved more than the single issue of whether respondents' actions violated the automatic stay. Time charged for Mr. Ellenberg's services entails preparation of briefs for both the district court and the circuit court of appeals, as well as preparation for oral argument and a hearing before the Sixth Circuit Court of Appeals.

The $3,161.12 billed for preparation by paralegals of the fifteen-page fee statement supporting the trustee's motion does not appear to be justified by the record in this matter. The allowance for preparation of the fee statement shall not exceed three percent of the fees and expenses otherwise awarded.[12]

Additionally, the court does not believe the charges for the following services are supported by the record:

| Date | Attorney | Service | Time |
|------|----------|---------|------|
| 2/27/84 | M. Walker | telephone conference about witness list | 1.00 |
| 3/1/84 | D. Wickham | filing show cause order | 0.40 |
| 9/10/84 | A. Emery | work on Liberis statement | 1.00 |
| 9/14/84 | A. Emery | Liberis contempt—work on statement of hours spent | 1.00 |
| 11/20/84 | M. Ellenberg | Review time charges | 0.17 |
| 11/20/84 | A. Emery | Review time entries | 0.83 |

the award in Order No. 61 of costs and expenses incurred in prosecuting the contempt proceeding.

8. The reported actual time expended on this matter, 300.02 hours, includes approximately fifteen hours of travel time deleted in accordance with Order No. 129 and an accompanying memorandum entered October 31, 1984.

9. Walker & Walker, P.C. is local counsel for the trustee.

10. Mary Walker was apparently involved in the preparation for, but did not attend, the hearing.

11. See *In re Crabtree*, 45 B.R. 463, 468–69 n. 20 (Bankr.E.D.Tenn.1984) (3.0 hours of Douglas Wickham's services, billed at $100.00 per hour, on March 2, 1984, is duplicative).

12. The court has previously allowed the Cadwalader firm interim compensation awards including allowances for fee preparation statements of approximately three percent of the total fees and expenses requested. See *In re Crabtree*, 45 B.R. 463, 466 (Bankr.E.D.Tenn.1984).

Accordingly, the award for attorney fees shall be reduced by the amount of $481.90.[13]

Deducting the amounts of $300.00, $3,161.12 and $481.90, the trustee is entitled to recover fees totaling $33,784.06 from the respondents. Expenses in the requested amount of $2,123.41 are fully allowed. Additionally, $1,077.22 is allowed for preparation of the fee statement. Hence, the total award equals $36,984.69.

---

13. Calculations by the court to determine the reduction are based on the fee rates reported on page 14 of the Schedule of Attorney Fees and Expenses, Exhibit D to the trustee's motion to tax costs and expenses, filed August 16, 1985.