In re Henry GHERMAN, First Financial Planning Corporation of South Florida, Inc., and Financial & Investment Planning, Inc., a/k/a FIP, Inc., Debtors.

Bankruptcy Nos. 88–03266–BKC–TCB to 88–03268 BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

March 28, 1990.

John W. Kozyak, Kozyak Tropin & Throckmorton, P.A., Miami, Fla., for James S. Feltman, trustee.

David D. Bird, Miami, Fla., Asst. U.S. Trustee.

Robert A. Schatzman, Schantz, Schatzman & Aaronson, Miami, Fla., for Creditors' Committee.

Lee J. Weintraub, Weintraub & Rosen, P.A., Miami, Fla., for Greenburg and Yahr.

MEMORANDUM OPINION AND ORDER ON APPLICATION FOR INTERIM COMPENSATION OF ACCOUNTANT FOR TRUSTEE

WILLIAM H. BROWN, Bankruptcy Judge, by Assignment.

This core proceeding[1] came on to be heard on March 19, 1990, upon the notice of hearing for an application to pay interim compensation to the trustee's accountant, Holtz & Company, Certified Public Accountants of Miami, Florida. The application (C.P. No. 704)[2] seeks approval of $70,820.00 in accounting services and $183.46 in expenses accrued from May 1, 1989

---

1. 28 U.S.C. § 157(b)(2)(A), (B) and (O).

2. References to the court's document numbers are shown as (C.P. No.).

through December 31, 1989. Further, the trustee moves to authorize the payment of $111,310.23 in compensation and expenses for the period August 22, 1988 through April 30, 1989, which amount was ordered withheld by former Chief Judge Thomas C. Britton on August 22, 1989. (C.P. No. 553).

## HISTORY OF CASE

An excellent history of the case is recited in both Judge Britton's August 22, 1989 order, 105 B.R. 714, and in the trustee's application filed January 22, 1990. The court will not repeat that history; however, the court notes that Judge Britton considered and ruled upon thirteen applications for professional compensation in his August 22, 1989 order. The trustee's present application additionally provides a clear explanation of the work performed by Holtz & Company.

The substance of Judge Britton's order, as to Holtz & Company, was that important and essential work had been performed, yet "[m]uch of the effort which forms the predicate for these interim applications has yet to produce any funds for the bankruptcy estates." (Page 11, C.P. No. 553). Therefore, Judge Britton approved $166,-963.00 of the compensation requested by Holtz & Company, and a withholding of the $111,310.23 balance resulted. There is further a strong suggestion in Judge Britton's order that the trustee should expedite a distribution to creditors.

At the March 19, 1990 hearing, it was represented to the court that the joint plans, confirmed on July 20, 1989, anticipated a fifteen (15%) percent distribution to unsecured creditors. However, due in part to the work of many professionals, the trustee now anticipates at least a twenty (20%) percent distribution. Further, the trustee is engaged in ongoing litigation, including RICO suits, for which the trustee needs the expert testimony of Holtz & Company. Cash collections for the estate to date are $4,700,000.00, and the trustee represents that meticulous work by Holtz & Company reduced the filed claims by two-thirds to $15,000,000.00. Therefore, the net value to the estate of the account-ants' work is significantly larger than the mere cash recovery.

## PRESENT APPLICATION

■ Holtz & Company has an impressive background and experience in the bankruptcy area (see curriculum vitae attached to application, C.P. No. 704), and Holtz & Company were complemented by both the trustee's counsel and by counsel for the creditors' committee as being effective forensic accountants.

No one objected to the allowance of the $71,003.46 accrued from May 1, 1989 through December 31, 1989. Of course, "[t]he court has the authority and responsibility to determine the reasonableness of all fee requests, regardless of whether objections are filed." *In re Washington Manufacturing Co.*, 101 B.R. 944, 950 (Bankr.M.D.Tenn.1989), *quoting In re Temple Retirement Community, Inc.*, 97 B.R. 333, 336 (Bankr.W.D.Texas 1989); *see also* 11 U.S.C. § 330(a)(1). This court has independently evaluated the application on behalf of Holtz & Company and finds that it is well documented, that it contains self-imposed restrictions (e.g. no charges were made for certain clerical work such as making deposits), and that it represents "(1) reasonable compensation for actual, necessary services rendered by such ... professional person ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and (2) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1) and (2); *see also* Bankruptcy Rule 2016. Therefore, the request for $70,-820.00 for accounting services and for $183.46 in expenses is approved, and the trustee is authorized to make payments to Holtz & Company in those amounts.

However, the creditors' committee and counsel for one creditor asserted that the $111,310.23 should continue to be held back. The theory of the creditors' committee is that the victims of the debtors' fraud should be made as whole as possible and that payment of the requested hold back was detrimental to that goal.

■ This court agrees with Judge Britton that "the administration of these cases

is solely for the benefit of the debtors' victims." (Page 2, C.P. No. 553). However, administrative expenses, if properly allowed, are by their nature "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). If professional time is excessive, the bankruptcy court should not hesitate to reduce a fee allowance. *See, e.g., In re Crabtree,* 45 B.R. 463 (Bankr.E.D.Tenn.1984). "However, excessiveness is relative to the total circumstances of each case." *In re Washington Manufacturing Co.,* supra at 955. This court has not been presented with any argument that the $111,310.23 request is excessive. To the contrary, the parties complement the accounting firm for a job well done.

■ The argument is that the court should continue to withhold these fees and expenses merely because their payment might reduce the distribution to creditors. This appears to be a self-defeating argument. All parties concede that the accounting firm has performed essential work which has benefited the estate. Clearly, the accountants should not be deterred from further work which may enhance the estate. As previously noted, benefit of professional work may not be measured always in terms of funds brought into the estate.

More troubling to the court is the trustee's representation that expert testimony will be needed of the accountants in pending litigation. The trustee contends that "[t]he existence of a large outstanding receivable owed the accountants invites the contention by opposing counsel that their testimony lacks objectivity, by analogy to the rules restricting accountants from working when bills remain unpaid or for contingent fees generally." (Page 11 of application, C.P. No. 704). In response, the creditors' committee correctly states that professionals working in a bankruptcy case always may be post petition creditors and that such a status does not deter effectiveness. Yet, bankruptcy professionals do not normally testify as expert witnesses, and the risk of impairing the effectiveness of this expert's testimony is an unnecessary one is this case.

■ A method exists to compensate this professional for past work while preserving the opportunity to recoup fees if at the conclusion of the case the professional is found to have been paid a disproportionate amount. When the professional is the debtor's attorney, § 329(b) of the Bankruptcy Code permits the court to direct disgorgement of any compensation, "to the extent excessive." 11 U.S.C. § 329(b); *see also* Bankruptcy Rule 2017. While a similar code provision is not found for other professionals, it is clear that interim compensation, such as the requested compensation in the present context, is subject to the court's discretion. 11 U.S.C. § 331. The court finds nothing in the Code to prohibit conditions being placed on the allowance of interim compensation under § 331.

Therefore, the court approves and authorizes the trustee also to pay Holtz & Company the $111,310.23 in withheld fees and expenses, subject to further review by the court when final compensation is determined for all professionals. At that time, should the court determine that Holtz & Company had received a disproportionate administrative distribution in light of the total administrative claims or the total distribution to creditors, Holtz & Company is subject to disgorgement of such amounts of the $111,310.23 as the court may then deem appropriate. Citing Code § 503, one bankruptcy court has observed:

"Certainly, it is clear that if some administrative expenses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro rata."

*In re Kaiser Steel Corp.,* 74 B.R. 885, 891 (Bankr.D.Colo.1987).

By its receipt of the $111,310.23 distribution, Holtz & Company will be acceding to this condition for payment at this time.

SO ORDERED.