**BETTER HOMES OF VIRGINIA, INC., Plaintiff,**

v.

**BUDGET SERVICE COMPANY, et al, Defendants.**

**In re BETTER HOMES OF VIRGINIA, INC., a/k/a A-1 Enterprises, Inc., a/k/a A-1 Supply Company, Inc., a/k/a A-1 Commercial Roofing, Inc.**

Civ. A. Nos. 85–312–N, 85–353–N.

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 23, 1985.

---

Michael S. Weisberg, Norfolk, Va., for plaintiff.

R. Clinton Stackhouse, Jr., Stackhouse, Rowe & Smith, Norfolk, Va., Stephen F. Shames, Shames & Byrum, Chesapeake, Va., for defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

This appeal from the United States Bankruptcy Court for the Eastern District of Virginia concerns the statutory and constitutional authority of a bankruptcy judge to enforce the automatic stay provisions of 11 U.S.C. § 362(a) by the use of civil contempt proceedings.

The Bankruptcy Court found that the actions of the defendant constituted civil contempt and, under 11 U.S.C. § 362(h), awarded to Better Homes of Virginia, Inc. (Better Homes) actual damages of $350.00, attorney's fees of $1,162.50, and punitive damages of $10,000. The Bankruptcy Court also fined defendants Bunch and Budget $15,000, jointly and severally.

Additionally, the Bankruptcy Court certified to this Court that the actions of defendants Budget Service Company (Budget) and Allen Bunch constituted criminal contempt. This Court has already set the criminal contempt charges for hearing, and will decide those issues at that time.

At present, the only issue before the Court is the civil contempt order entered by the Bankruptcy Court against the defendants on May 13, 1985. After reviewing the facts developed below and giving careful consideration to the arguments raised by appellants Budget and Bunch, this Court hereby AFFIRMS the Bankruptcy Court's award of actual and punitive damages and attorney's fees. This Court concludes, however, that the imposition of a fine was not within the authority of the Bankruptcy Judge and hence REVERSES the order insofar as that fine is concerned.

## I.

On October 31, 1984, Better Homes filed a petition for relief under Chapter 11 of the Bankruptcy Code and, by operation of law, an automatic stay went into effect. 11 U.S.C. § 362(a). Prior to the filing of this petition, Better Homes had leased three vehicles from appellant Budget Service Company. Appellant Allen Bunch, President of Budget, called Richard Green, President and sole stockholder of Better Homes, about delinquent rent payments on the three vehicles. Green assured Bunch that he would try to satisfy his obligations but that, in light of his bankrupt status, all inquiries should be referred to his attorney. Bunch later received written notice of the Chapter 11 proceeding by mail. The record also indicates that Bunch spoke with appellee's attorney about the existence and effect of the Chapter 11 filing and the automatic stay.

Ignoring the notice he had admittedly received, Bunch resorted to self-help in an effort to reclaim the vehicles. On March 25, 1985, he and a companion arrived at Better Homes' business premises and proceeded to drive off with one of the leased trucks. In an effort to stop Bunch, one of Better Homes' employees was injured.

The following morning Bunch returned for the two other vehicles with two men, one of whom was armed with a gun. Bunch drove a vehicle onto Better Homes' premises, and thus blocked the driveway and prevented Better Homes' employees from leaving on their work assignments. After arguing with Green, Bunch summoned the police who told both Bunch and Green that the matter was civil in nature and advised them to consult their attorneys. On the day of this last confrontation, Better Homes filed a motion for an order to show cause why Budget and Bunch should not be held in contempt for violating the automatic stay. The order was entered by the Bankruptcy Court on March 26, 1985 and a hearing was held on April 10. As noted, on May 13, 1985, the Bankruptcy Court entered the civil contempt order that forms the basis for this appeal.

## II.

Appellants Budget and Bunch contend: (1) that a civil contempt proceeding is not a "core" proceeding in bankruptcy and the order entered was thus beyond the statutory authority of the Bankruptcy Court; (2) that the Bankruptcy Amendments and Federal Judgeship Act of 1984 removed from the Bankruptcy Court whatever civil contempt power they may have had before those acts; (3) that the exercise of civil contempt powers by Bankruptcy Judges violates the Constitution. U.S. Const. Art. II; and (4) that the order which included an award of punitive damages and a fine, was criminal in nature and thus beyond the authority of the Bankruptcy Court. This Court will address these contentions in turn.

### A. STATUTORY AUTHORITY

#### (1) *Core Proceeding.*

Under 11 U.S.C. § 105(a), the Bankruptcy Court is empowered to "issue any order, process, or judgment necessary or

appropriate to carry out the provisions of [the bankruptcy code]." An automatic stay is necessary; otherwise the debtor's assets may be reclaimed or disposed of before the case can proceed to adjudication and the Bankruptcy Court's eventual order would be rendered meaningless. Congress recognized this problem when it stated: "[the] automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." H.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong & Admin.News 1978, 5787 (discussing 11 U.S.C. § 362). The only way for the Bankruptcy Court to put teeth behind its stay is through the threat of contempt proceedings. A court must have a way to enforce its orders, see *Wood v. Georgia*, 370 U.S. 375, 380, 383, 82 S.Ct. 1364, 1367, 1369, 8 L.Ed.2d 569 (1962); and the contempt order is an appropriate way to carry out the purpose of 11 U.S.C. § 362. *See In re Johns-Manville Corp.*, 26 B.R. 919 (Bankr. S.D.N.Y.1983); *cf. Fernos-Lopez v. U.S. District Court*, 599 F.2d 1087 (1st Cir. 1979).

The powers conferred by 11 U.S.C. § 105(a) are, however, limited by the provisions of Title 28. *See* 11 U.S.C. § 105(c). Section 157 of Title 28 provides in relevant part:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 [11 USCS §§ 101 et seq.] *and all core proceedings arising under title 11* [11 USCS §§ 101 et seq.] or arising in a case under title 11 [11 USCS §§ 101 et seq.] referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title [28 USCS § 158].
> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11 [11 USCS §§ 101 et seq.]. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and

after reviewing de novo those matters to which any party has timely and specifically objected.

Under this section, a Bankruptcy Court may hear only matters going to the core of the primary bankruptcy case; collateral matters must be heard by the District Court. Appellant contends that a proceeding to enforce an automatic stay by means of civil contempt is not a "core" proceeding within the meaning of 28 U.S.C. § 157 and thus beyond the scope of the Bankruptcy Court's powers.

First, as discussed above, the automatic stay provision of § 362 plays a central role in the administration of the Bankruptcy Code. The Supreme Court has, in fact, found that a proceeding for civil contempt for violation of an injunction "should be treated as part of the main cause"; i.e., as a "core" proceeding. *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 454, 52 S.Ct. 238, 241, 76 L.Ed. 389 (1932). Second, to the extent the legislative history reflects Congress' intent, it indicates the "core proceeding" limitation was inserted primarily to prevent bankruptcy judges from adjudicating state-law causes of action. *See Statement of the Hon. Orrin G. Hatch Upon Consideration of the Conference Report On H.R. 5174 From the Senate Committee On the Judiciary*, 98th Cong., 2d Sess. (1984) at 594–96; see also discussion, *infra*, of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). This limitation was not intended to exclude civil contempt actions from the Bankruptcy Court's authority.

Third, appellant's view of § 157 would make largely meaningless the distinction between criminal and civil contempt drawn by Congress in 28 U.S.C. § 1481. Section 1481 grants the Bankruptcy Court "the powers of a court of equity, law, and admiralty" but limits the court's power to punish a *criminal* contemnor to situations where the contemptuous conduct occurred in the judge's presence. Clearly implied by this language is Congress' intent to leave unrestricted the statutory grant of power

in 11 U.S.C. § 105 as to *civil* contempt. This reasoning is buttressed by the language of § 105 which provides that the "court may issue any order that is necessary or appropriate to carry out the provisions of this title." As discussed above, civil or coercive contempt actions are "necessary" and "appropriate" to effectuate 11 U.S.C. § 362; however, criminal contempt actions are necessary only to vindicate the dignity of the court and are *collateral* to the bankruptcy proceeding. *See In Re Crabtree,* 39 B.R. 702 (Bankr.E.D.Tenn. 1984); *cf. Bray v. United States,* 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975) (criminal contempt action collateral to Economic Stabilization Act case because the Act did not contain provisions prohibiting violation of enforcement order).

(2) *Bankruptcy Amendments and Federal Judgeship Act of 1984.*

■ Appellant asserts that conflicting provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 leave 28 U.S.C. § 1481 a nullity. This assertion is based on § 113 of that act which provides that § 1481 "shall not be effective." However, § 121 of that same act provides that § 1481 *shall* be effective. As a matter of statutory construction, an attempt must first be made to reconcile the conflicting provisions with Congressional intent. As illustrated by the foregoing discussion, it is this Court's view that Congress intended the Bankruptcy Court's civil contempt power to continue. However, even if we were to find Congress' intent unclear, under the general rule of statutory construction as to mutually exclusive statutes passed on, and effective on, the same date, § 1481 would remain unaffected by either provision. *See* 1A Sutherland, *Statutory Construction,* § 23.17 (4th ed.1972).

This Court therefore finds abundant statutory authority for the Bankruptcy Judge's exercise of the power of civil contempt.

## B. CONSTITUTIONAL AUTHORITY

Appellant contends that, even if Congress has given the Bankruptcy Judge statutory authority to hear a civil contempt proceeding, the exercise of the "contempt" power by the Bankruptcy Court was unconstitutional. As indicated, *supra,* however, it is crucial to distinguish between that power necessary to the discharge of the Court's functions and that vested only in Article III courts to punish for criminally contemptuous conduct. *See Fernos-Lopez v. U.S. District Court,* 599 F.2d 1087 (1st Cir.1979). The division between the legitimate and illegitimate exercise of the contempt power by an Article I official is that "broad boundary line which separates the limited implied power to deal with classes of acts as contempts for self preservation and the comprehensive ... power to provide by law for punishment for wrongful acts. *Marshall v. Gordon,* 243 U.S. 521, 546, 37 S.Ct. 448, 455, 61 L.Ed. 881 (1917) (finding illegitimate the exercise, by Congress, of the contempt power when unnecessary for self preservation).

Nonetheless, appellant argues that ₁the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) [hereinafter referred to as *Marathon*] requires this Court to hold Congress' delegation of power to be unconstitutional.

■ The plurality in *Marathon* found that Congress had attempted to vest too many of the attributes of Article III judicial power in non-Article III courts, thereby violating the separation of powers required by the Constitution. Appellant, however, seems to claim that the characterization of a power as judicial in nature ends the inquiry, preventing its exercise by a non-Article III official. This Court does not read *Marathon* that broadly.

In *Marathon,* a debtor seeking reorganization under Chapter 11 brought suit against his creditor seeking damages for breaches of contract and warranty, misrepresentation, coercion and duress. The Bankruptcy Court denied the creditor's motion to dismiss, 6 B.R. 928, and the creditor appealed. The Supreme Court held that the Bankruptcy Court's statutory authority

to adjudicate these essentially state law causes of action was too broad; that the Bankruptcy Court could not constitutionally exercise jurisdiction over all civil proceedings *arising under* the Bankruptcy Code.

This case is clearly distinguishable from *Marathon.* In *Marathon,* the Bankruptcy Court was reaching out to decide state law; in the instant case, the Bankruptcy Court was deciding an issue of purely federal law. In *Marathon,* the rule of decision concerned "a right independent of an antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court." *Id.* 458 U.S. at 84, 102 S.Ct. at 2878. In the instant case, it is clear that the contempt order did not concern a right independent of, or antecedent to the debtor's bankruptcy; the stay violated was, in fact, an element of the bankrupt's petition.

This distinction between federal and state law is crucial. The *Marathon* Court indicated that when Congress creates a right, it has "substantial discretion to prescribe the manner in which that right may be adjudicated." *Id.* at 81, 102 S.Ct. at 2876. This discretion extends to bankruptcy civil contempt proceedings. Thus *Marathon* does not dictate that the exercise of this power is unconstitutional.

This Court holds that the exercise of the power of civil contempt by a Bankruptcy Judge to protect the administration of the Bankruptcy Code is within the authority delegated by Congress and the ambit of their constitutional authority.

### III.

Appellant contends that the judgment of the Bankruptcy Court was, in fact, criminal in nature and therefore beyond the statutory authority of the Court. In order to properly respond to appellant's contention, it is necessary to consider separately the constituent parts of the damages awarded.

### A. ACTUAL DAMAGES

Civil contempt orders are, by their nature, remedial or coercive. *Shillitani v.*

*United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Consequently, the award of compensatory damages by the Bankruptcy Judge was supported both by the law, *see* 11 U.S.C. § 362(h), and by the facts of the case. The evidence demonstrated that the appellant's actions prevented the debtor's work crews from leaving for their work assignments for approximately one and a half hours. The debtor estimated his damages due to lost man-hours to be $500.00. The Bankruptcy Judge's award of $325.00 in actual damages was well within reason.

### B. ATTORNEY'S FEES

As with the actual damages, the award of attorney's fees is consonant with the civil nature of the proceeding, the statute under which the Court acted, 11 U.S.C. § 362(h), and the facts developed at the hearing. Further, this award is in keeping with the modern trend to allow attorney's fees in antitrust, securities and civil rights cases; even cases, under F.R.Civ.P. 11, involving violations of the rules of court.

### C. PUNITIVE DAMAGES

Appellant asserts that the award of punitive damages by the Bankruptcy Judge transforms the character of the order from civil to criminal. Although this argument has a certain semantic allure, this Court rejects it for the following reasons.

The label "punitive damages" is an unfortunate one. It places undue emphasis on the vindictive aspect of the doctrine and belies its true origin. The terms punitive, exemplary and vindictive damages are used interchangably and are synonomous in meaning. *See* 22 Am.Jur.2d *Damages,* § 236 (1965) and cases cited therein. It has been said that the use of exemplary damages evolved because courts at common law refused to recognize as injuries many things which should enter into a proper measurement of damages. *Id.* Whatever its genesis, it is well settled that an award of exemplary damages is entirely appropriate to compensate an injured party for "the injury inflicted by the defendant on the

mental feelings of [the plaintiff], such as shame degradation, loss of social position, and the like...." 5C Michie's Jurisprudence, *Damages*, at 136 (1983); *See also Sperry Rand Corp. v. A–T–O, Inc.*, 459 F.2d 19 (4th Cir.1972) (misappropriation of trade secrets); *Mize v. Harford Ins. Co.*, 567 F.Supp. 550 (W.D.Va.1982); *Hates v. Irwin*, 541 F.Supp. 397 (N.D.Ga.1982) (interference with contract relations); *Giant of Virginia v. Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967) (malicious prosecution). The evidence in this case reveals that Better Homes had been attempting to persuade its employees and business associates that its economic house was in order at the time of appellant's "raid" on its premises. Undoubtedly the appellant's violent and unwarranted behavior caused Better Homes a real, though unquantifiable, loss to its goodwill. Such an injury is clearly compensable by exemplary damages under 11 U.S.C. § 362(h).

Neither can it be claimed that the mere availability of "punitive" damages transforms a civil action into one of a criminal nature. Congress has provided for punitive damages in a plethora of civil actions, from Jones Act violations, *see* 46 U.S.C. § 688, to Clayton Act violations, *see* 15 U.S.C. § 16(a). Indeed, it seems that cases where such damages are available are now the rule rather than the exception in civil tort cases against some industries.

It must also be assumed that Congress considered punitive damages under 11 U.S.C. § 362(h) to be civil, and not criminal, in nature. As indicated, *supra*, Congress enacted several provisions in 1984 for the primary purpose of conforming the Bankruptcy Code to the restrictions placed on Article I courts by the Supreme Court's plurality in *Marathon*. Since there is serious question as to whether the imposition of any criminal contempt sanction can be considered essential to the administration of the Bankruptcy Code, i.e., "core", it is highly unlikely that Congress would, in 1984, pass a provision providing for just such a sanction. "[T]he fact that one among alternative constructions would involve serious constitutional difficulties is

reason to reject that interpretation in favor of another." 2A Sutherland, *Statutory Construction*, § 45.11 (4th Rev.Ed.1984); *See United States v. Clark*, 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980); *Blasecki v. City of Durham, N.C.*, 456 F.2d 87 (4th Cir.1972).

In sum, the use of punitive damages by the Bankruptcy Judge was consonant with the Constitution and the *Marathon* opinion, authorized by statute and appropriate under the facts of the case. *See In Re Telecommunications Consultants, Inc.*, 50 B.R. 250, 13 B.C.D. 119 (Bankr.D.Conn., 1985), *In Re Baldwin*, 48 B.R. 901 (Bankr. S.D. Ohio 1985), *Mercer v. D.E.F., Inc.*, 48 B.R. 562 (Bankr.D.Minn.1985).

## D. FINE

■ Appellant contends that the fine levied upon him by the Bankruptcy Judge was criminal in nature. Since the Court had already awarded Better Homes adequate compensation for its losses, and since the fine was not made conditional on the observance of some future course of conduct, and hence is not coercive in nature, this Court agrees with appellant and finds the fine to be criminal in nature and beyond the statutory authority of the Bankruptcy Judge. *See United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

## IV.

■ Finally, appellant claims that the debtor-appellee either had no interest in the property repossessed or that the interest was not part of the debtor's estate, and therefore asserts that his behavior did not violate the stay. This contention is simply not supported, either in appellant's brief, or in the case law. When a debtor is the lessee of property at the time his petition is filed, the leasehold interest is deemed a part of the debtor's estate. *See, e.g., In re American International Airways, Inc.*, 44 B.R. 143 (Bankr.E.D.Pa.1984) (personalty); *see e.g., In Re Babco, Inc.*, 28 B.R. 656 (W.D.Pa.1983) (realty).

CONCLUSION

For the foregoing reasons, this Court finds that a Bankruptcy Judge may hear a civil contempt proceeding under the powers granted him by Congress and the limitations imposed on him by the Constitution. While he may award actual damages, attorney's fees and, in the appropriate case, punitive damages, a fine which is not conditional and does not attempt to induce some specific behavior on the contemnor's behalf is criminal in nature and beyond the power of the Bankruptcy Court.

The decision of the Bankruptcy Court is therefore AFFIRMED except as that portion of the judgment which fined defendants Allen Bunch and Budget Service Company $15,000. The imposition of said fine by the Bankruptcy Court is hereby REVERSED and that portion of the order VACATED.