**In re L.H. & A. REALTY, INC., Debtor.**

**Bankruptcy No. 85–212.**

United States Bankruptcy Court, D. Vermont.

July 10, 1986.

Edwin W. Free, Jr., Barre, Vt., for debtor.

Joseph C. Palmisano, Barre, Vt., for himself as trustee.

FRANCIS G. CONRAD, Bankruptcy Judge.

Because this debtor has obdurately continued for over six months to disregard orders of this Court requiring it to turn over to the trustee money that belongs to the estate, we are now left with no choice but to hold the debtor in civil contempt and to attempt to coerce compliance with our turnover orders.

I

The debtor, L.H. & A. Realty, Inc., owned and managed the New Avenue Hotel in St. Johnsbury, Vermont. On November 15, 1985 the debtor, turning for protection to the Bankruptcy Code, filed a petition under Chapter 7. The bank that held a mortgage on the hotel promptly filed a motion for relief from the automatic stay of 11 U.S.C. section 362(a). On December 18, 1985, at the hearing on the bank's motion, Mr. Louis Ferris, Jr., son of the debtor's president and either an officer, employee, or agent of the debtor's, testified that he had received, on the debtor's behalf, five thousand dollars ($5000.00) from a Mr. Arnold Budish as a deposit for the sale of the New Avenue Hotel. This deposit, like the hotel itself, is manifestly property of the estate under 11 U.S.C. section 541.

Mr. Ferris purported not to understand that he had no authority to sell the assets of the estate, but his demeanor and attitude on the witness stand suggest to us that he was being less than candid about the scope of his comprehension. Indeed, neither the debtor nor Mr. Ferris himself is a stranger to bankruptcy, having each filed in this Court before in 1982.

In any event, if there is room for doubt about whether the debtor was aware of the impropriety of accepting money for the sale of estate property, there is no doubt the debtor is aware of the wrongfulness of retaining this money. At the hearing on December 18, 1985, we ordered from the bench that the debtor turn the $5000.00 deposit belonging to the estate over to the trustee, as required by 11 U.S.C. sections 521(4) and 542(a). We repeated the Order on January 28, 1986 in our written decision granting the bank relief from stay to pursue foreclosure against the hotel that Mr. Ferris had tried to sell to Mr. Budish. *In re L.H. & A. Realty Company, Inc.*, 57 B.R. 265, 270 (Bkrtcy.D.Vt.1986).

On March 3, 1986, we held a hearing on the debtor's application to convert the case from Chapter 7 to Chapter 11. At this hearing, we again ordered the debtor to turn the deposit over to the trustee within three days. Although no representative of his client chose to attend, the debtor's attorney represented that he understood and would seek to secure compliance with our turnover Order. We granted the debtor's application to convert on March 7th.

On March 25th, we held a hearing on a motion by the Chapter 7 trustee to hold the debtor in contempt for failing to relinquish the $5000.00 and on separate motions by two creditors for appointment of an independent trustee now that the case had been converted to a case in Chapter 11. We granted the motions to appoint a trustee and directed the trustee in Chapter 7 to continue to serve as trustee in the converted case. The trustee's motion for contempt is the subject of this decision.

Over six months have elapsed since our original Order to the debtor on December 18th of last year to turn the $5000.00 the debtor received as a deposit on the sale of estate property over to the trustee. We have since reiterated the Order several times to no avail. Despite the representations of debtor's counsel at the several hearings, the money remains in the possession of the debtor or its agent. At some point, patience, tolerance, and the accorded benefit of every doubt must yield in the face of unequivocal orders repeatedly ignored. By the most generous standard, this debtor's protracted refusal to comply with a legitimate directive of this Court to surrender money to which the debtor has no claim constitutes willful contempt. The debtor's recalcitrance leaves us no alternative except to grant the trustee's motion to hold the debtor in civil contempt.

## II

Difficulties in interpreting the decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*) and the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 amendments") have raised doubts about our authority to issue an order of civil contempt. Compare *Martin-Trigona v. Shiff*, 702 F.2d 380, 383–84 (2d Cir.1983) (*Marathon* raises doubts about constitutionality of power of civil contempt conferred on bankruptcy courts by 28 U.S.C. section 1481); *In re Magwood*, 785 F.2d 1077, 1078 (D.C.Cir.1986) (with apologies to all, declining to resolve the issue). In view of this uncertainty, several bankruptcy courts have elected to submit proposed findings of fact and conclusions of law to the district court rather than entering a final contempt order themselves. See *In re Taylor*, 59 B.R. 197, 200–01 (Bkrtcy.M.D.La.1986); *Matter of Kalpana Electronics, Inc.*, 58 B.R. 326, 335 (Bkrtcy.E.D.N.Y. 1986); *In re Crabtree*, 47 B.R. 150, 155, 12 B.C.D. 1043 (Bkrtcy.E.D.Tenn.1985). With all due respect to their circumspection and restraint, we cannot shy away from what we perceive to be our judicial responsibility to decide, subject to review on appeal, problematical, pivotal, or controversial questions of law.

Like many courts, this Court had in the past taken for granted the power to hold a party in civil contempt. *In re Barrup*, 51 B.R. 318, 319–20 (Bkrtcy.D.Vt.1985). See also, e.g., *In re Northeastern International Airways, Inc.*, 56 B.R. 247, 248 (S.D.Fla. 1986) (taking for granted that a violation of

the automatic stay places the creditor in contempt of the bankruptcy court).

■ The power of civil contempt inherent in the judicial responsibilities of the bankruptcy judge is recognized by statute, 11 U.S.C. section 105(a), by rule, Bankruptcy Rule 9020,[1] and has been acknowledged or simply assumed to subsist in various non-Article III tribunals. Congress has safeguarded the constitutionality of the bankruptcy court's circumscribed contempt power by making the power contingent on the reference of bankruptcy cases and proceedings from the district court, 28 U.S.C. section 157(a) and (d), confining it to orders issued within core proceedings, 28 U.S.C. section 157(c)(1), and subjecting it to appellate review by the federal judiciary, 28 U.S.C. section 158. Certainly, the delegation to an Article I bankruptcy judge of the power to compel compliance with orders in a core proceeding is no more unconstitutional, and does no greater violence to the separation of powers, than does the delegation of the power to decide the core proceeding in the first instance. We now expressly hold that a bankruptcy judge has the authority to issue an order of contempt to coerce compliance with an earlier order in a core proceeding because the finding of contempt is part and parcel of the core proceeding itself.

An order to turn over property of the estate is a core proceeding. 28 U.S.C. section 157(b)(2)(E). If a contempt hearing on the willful violation of a turnover order is merely a related proceeding and not a constituent of the core proceeding that the original order was issued in, then we are prohibited by statute from entering a final contempt order. 28 U.S.C. section 157(c)(1). The first question, then, is whether an order to coerce compliance with an earlier order entered in a core proceeding is itself part of the core proceeding.

The Supreme Court has instructed us that, "[p]roceedings for civil contempt are ... instituted and tried as a part of the main cause." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444–45, 31 S.Ct.

492, 499, 55 L.Ed. 797 (1911). The question of the relation of a contempt proceeding to the main suit was fully considered in *Gompers*, where the Court "determined that the proceeding was not to be regarded as an independent one, but as part of the original cause." *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 453, 52 S.Ct. 238, 240, 76 L.Ed. 389 (1932). We believe that an order compelling compliance with an earlier order in a core proceeding is so inextricably interwoven with the original order that, like the warp and woof of a cloth, they form a continuous and integral whole. Accord *Better Homes of Virginia, Inc. v. Budget Service Company*, 52 B.R. 426, 429, 13 B.C.D. 454, 13 C.B.C.2d 377 (E.D.Va.1985); *In re Industrial Tool Distributors, Inc.*, 55 B.R. 746, 749 (N.D.Ga. 1985). Contra *In re Omega Equipment Corporation*, 51 B.R. 569, 574, 13 C.B.C.2d 371 (D.D.C.1985); *In re Mab Foods, Inc.*, 49 B.R. 73, 75 (E.D.N.Y.1985). In this respect, civil contempt differs essentially from criminal contempt, which involves an independent, collateral proceeding. See *Bray v. United States*, 423 U.S. 73, 75, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975); *Michaelson v. United States*, 266 U.S. 42, 64, 45 S.Ct. 18, 19, 69 L.Ed. 162 (1924).

Although we are not prohibited by statute from issuing final contempt orders, where is the source of our contempt power? In core proceedings, we think the power inheres in our judicial function to issue final orders. See *United States v. Hudson and Goodwin*, 11 U.S. (7 Cranch) 32, 35, 3 L.Ed. 259 (1812) (implied power of contempt in a court of justice); *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) (courts have inherent power to enforce compliance with their lawful orders through civil contempt). The Supreme Court has explained that:

> The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforce-

---

1. On the proposed draft of Rule 9020, see page 914, note 4, of this decision.

ment of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence, and invested with jurisdiction over any subject, they became possessed of this power.

*Ex Parte Terry,* 128 U.S. 289, 295, 9 S.Ct. 77, 32 L.Ed. 405 (1888), quoting *Ex Parte Bollman,* 8 U.S. (4 Cranch) 75, 94, 2 L.Ed. 554; Story, Const. sec. 1774, footnote (a); Bac.Abr. *Courts,* E. The implicit power of contempt has long been recognized, both in colonial England and in this country, as incident to all courts of record. *In re Cooper,* 32 Vt. 253, 257 (1852). It is as much a matter of common sense as of common law that an "order" signifies compulsion.

Federal courts have acknowledged that various courts and tribunals not created under Article III, including the Tax Court, the Claims Court, the Court of Military Appeals, the territorial courts, administrative agencies, and the legislature, are invested with the power to enforce their orders through civil contempt. After transforming it from an executive agency into an Article I court, Congress granted the contempt power to the United States Tax Court. 26 U.S.C. sections 7441, 7456(e). See *Ryan v. Commissioner of Internal Revenue,* 517 F.2d 13, 20 (7th Cir.1975), cert. denied, 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975) (presuming Tax Court's authority to enforce discovery order through contempt citation). But see *In re Cox,* 24 B.R. 930, 954 (E.D.Ark.1982) (expressing doubt about the constitutionality of the Tax Court's contempt power).

Despite the absence of a specific statutory grant, the implied contempt power of the United States Claims Court, an Article I court as indicated in 28 U.S.C. section 171, is preserved in Claims Court Rule 37(b). Similarly, in the face of statutory silence, the Court of Military Appeals, an Article I court, 10 U.S.C. section 867, enjoys the contempt power conferred on courts of the United States by 18 U.S.C.

section 401, in accordance with Court of Military Appeals Rule 41(b).

Although territorial courts are legislative courts, the United States Courts of Appeals for the Ninth and Third Circuits have upheld their inherent power of contempt. *Fleming v. United States,* 279 F. 613, 616 (9th Cir.1922), cert. dismissed, 260 U.S. 752, 43 S.Ct. 10, 67 L.Ed. 496 (1922) (China Court's contempt power exists irrespective of any statute, being inherent in the nature and constitution of such a court); *Francis v. People of the Virgin Islands,* 11 F.2d 860, 864 (3d Cir.1926), cert. denied sub nom. *Francis v. Williams,* 273 U.S. 693, 47 S.Ct. 91, 71 L.Ed. 843 (1926) (the power to enforce and protect the administration of justice within its jurisdiction is inherent in every court within our government, colonial and national). See also *United States v. Talbot,* 133 F.Supp. 120, 125–26, 15 Alaska 590 (D.Alaska 1955) (confirming implied contempt power of Alaska territorial court).

The Supreme Court has upheld the constitutionality of administrative agencies' adjudicating public rights and imposing civil penalties for their violation. *Atlas Roofing Company, Inc. v. Occupational Safety and Health Review Commission,* 430 U.S. 442, 450, 97 S.Ct. 1261, 1266, 51 L.Ed. 464 (1977). The Court has also recognized that Congress may exercise a restricted contempt power. *Anderson v. Dunn,* 19 U.S. (6 Wheat) 204, 227, 5 L.Ed. 242 (1821); *Marshall v. Gordon,* 243 U.S. 521, 546, 37 S.Ct. 448, 455, 61 L.Ed. 881 (1917).

We believe that an implicit power to enforce the orders of the bankruptcy court in core proceedings is incidental to its authority to decide core proceedings. Of course, Congress may limit a federal court's full use of this power. *Ex Parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873). The contempt power may undoubtedly be regulated within limits not precisely defined. *Michaelson v. United States,* 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924). The full contempt power of the bankruptcy court is limited to core proceedings by the derivative jurisdictional

grant in 28 U.S.C. section 157 and to civil contempt by the terms of 11 U.S.C. section 105(a).[2]

■ Although "that the power to punish contempts is inherent in all courts has been many times decided and may be regarded as settled law," *Michaelson* at 65, 45 S.Ct. at 20, and the exercise of the power in core proceedings is not prohibited by statute, has the bankruptcy court received any affirmative grant of the contempt power? We think it has. Congress has recognized the Court's authority to enforce its orders in 11 U.S.C. section 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Under section 105(a), recourse to civil contempt may be necessary and appropriate to implement provisions of the Bankruptcy Code. See *In re Industrial Tool Distributors, Inc.*, 55 B.R. 746, 749 (N.D.Ga.1985) (civil contempt order in core proceeding is "appropriate order" to effectuate Bankruptcy Code); *Better Homes of Virginia v. Budget Service Co.*, 52 B.R. 426, 430, 13 B.C.D. 454, 13 C.B.C.2d 377 (E.D.Va.1985) (civil or coercive contempt actions are necessary and appropriate to effectuate automatic stay); *In re Silver*, 46 B.R. 772, 774

(D.Colo.1985) (sanctions for contempt necessary to protect integrity of Bankruptcy Code); *In re Cox Cotton Co.*, 24 B.R. 930, 947, 9 B.C.D. 1176 (E.D.Ark.1982), vacated on other grounds sub nom. *Lindsey v. Ipock*, 732 F.2d 619 (8th Cir.), cert. denied sub nom. *Cryts v. French*, — U.S. —, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984) (full power of civil contempt implicitly authorized in 28 U.S.C. section 1482 and 11 U.S.C. section 105).[3]

The contempt power is also implicitly confirmed in Rule 9020, promulgated by the Supreme Court after *Marathon* and presumably constitutional, *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (rules of civil procedure presumed to be constitutional). The Rule limits a bankruptcy judge's criminal contempt power pursuant to 28 U.S.C. section 1481, and by implication leaves the power of civil contempt intact. The Advisory Committee clarifies the distinction:

> The Federal Rules of Civil Procedure do not specifically provide the procedure for the imposition of civil contempt sanctions. The decisional law governing the procedure for civil contempt sanctions by the district courts will be equally applicable to the bankruptcy courts.

Bankruptcy Rule 9020, Advisory Committee Note.[4]

---

**2.** See also former section 241, Bankruptcy Reform Act, Pub.L. No. 95–598 (1978) (prohibiting punishment for criminal contempt not committed in judge's presence or warranting imprisonment) and former Bankruptcy Rule 920(a)(3) (limiting amount of fine for contempt to $250).

**3.** 28 U.S.C. section 1481, which gave the Bankruptcy Court all "the powers of a court of equity, law and admiralty" except the power to enjoin another court or punish criminal contempt not committed in the judge's presence or warranting imprisonment, has occasionally also been cited in support of the Court's contempt power. There is some skepticism that section 1481 has survived the Bankruptcy Amendments and Federal Judgeship Act of 1984 in light of contradictory statements indicating both that the existing provision "shall not be effective" and that it shall be effective "on the date of enactment of the 1984 Act." Several courts have held or simply assumed that section 1481 was effectively repealed by the 1984 amendments. *In re Industrial Tool Distributors, Inc.,*

55 B.R. 746, 749, n. 6 (N.D.Ga.1985); *In re Johns-Manville Corporation,* 52 B.R. 940, 941, n. 2 (S.D.N.Y.1985); *In re Omega Equipment Corporation,* 51 B.R. 569, 572, 13 C.B.C.2d 371 (D.D. C.1985). See also 2 Collier on Bankruptcy, par. 105.03 [105–7] (15th ed. 1985). Contra *Better Homes of Virginia v. Budget Service Co.,* 52 B.R. 426, 430, 13 C.B.C.2d 377 (E.D.Va.1985) (holding that Congress intended the contempt power to continue and that, even if the intent of Congress were ambiguous, under the general rule of statutory construction of mutually exclusive statutes, section 1481 would remain unaffected). Since we believe that 11 U.S.C. section 105(a) recognizes the Bankruptcy Court's power to effectuate its orders in core proceedings through civil contempt, we need not decide whether the broader power in 28 U.S.C. section 1481 has been repealed by the 1984 amendments.

**4.** The Advisory Committee on Bankruptcy Rules has released a draft of the new rules proposing to amend Rule 9020 to abolish the distinction between criminal and civil contempt, requiring

Even if 28 U.S.C. section 157(c) does not prohibit, and 11 U.S.C. section 105(a) definitely authorizes, exercising the power of civil contempt to effectuate orders in core proceedings, are there constitutional objections to investing this power in a court that was not created under Article III of the United States Constitution? Although no Court of Appeals has addressed the question, compare *In re Magwood,* 785 F.2d 1077, 1078 (D.C.Cir.1986),[5] several District Courts have recently advanced the proposition that the contempt power is an essential judicial attribute of Article III courts that may not be delegated to a bankruptcy court without violating the doctrine of separation of powers. See *In re Industrial Tool Distributors, Inc.,* 55 B.R. 746, 751 (N.D.Ga.1985) (declaring in dicta that the statutory grant of civil contempt power to bankruptcy judges is an unconstitutional delegation of Article III powers to a non-Article III court); *In re Omega Equipment Corporation,* 51 B.R. 569, 573, 13 C.B.C.2d 371 (D.D.C.1985) (dicta that non-Article III court may not exercise judicial power of enforcement, particularly when recourse to an Article III court is possible); *In re Cox Cotton Co.,* 24 B.R. 930, 939–56, 9 B.C.D. 1176 (E.D.Ark.1982), vacated on other grounds sub nom. *Lindsey v. Ipock,* 732 F.2d 619 (8th Cir.), cert. denied sub nom. *Cryts v. French,* — U.S. —, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984) (holding statutory grant of inherently judicial power of contempt to a non-Article III bankruptcy court unconstitutional because contempt power is an inseparable non-delegable attribute of the judicial power of the United States). But see *Better Homes of Virginia v. Budget Service Co.,* 52 B.R. 426, 430–31, 13 B.C.D. 454, 13 C.B.C.2d

377 (E.D.Va.1985) (holding that exercise of civil as distinct from criminal contempt power by bankruptcy judges is within the ambit of their constitutional authority, since characterizing the power as judicial in nature does not preclude its exercise by a non-Article III official).

Article I, Section 8, Clause 4 of the United States Constitution grants Congress the plenary power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." By virtue of this authority, Congress enacted the several Bankruptcy Acts, the Bankruptcy Code of 1978, and the Bankruptcy Amendments and Federal Judgeship Act of 1984. As Justice Douglas remarked in *Marine Harbor Properties, Inc. v. Manufacturer's Trust Company,* 317 U.S. 78, 83, 63 S.Ct. 93, 96, 87 L.Ed. 64 (1942), "[t]he federal bankruptcy power is, of course, paramount and supreme and may be so exercised by Congress as to exclude every competing or conflicting proceeding in state or federal tribunals." See generally *United States v. Fox,* 95 U.S. (5 Otto) 670, 24 L.Ed. 538 (1878) (Congress may legislatively embrace whatever it deems important to a complete and effective bankruptcy system). In addition, the necessary and proper clause of the Constitution, Article I, Section 8, Clause 18, though not an independent grant of power, represents "a caveat that the Congress possesses all the means necessary to carry out the specifically granted 'foregoing' powers of section 8 ..." *Kinsella v. United States,* 361 U.S. 234, 247, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960).

In 11 U.S.C. section 105(a), Congress used its constitutional authority to allow bankruptcy courts to issue orders neces-

---

both types of proceeding to be initiated in the District Court. The rule as drafted has apparently received considerable critical comment because it proposes definitively to resolve by rule difficult constitutional and statutory questions better left to case law. In any case, the proposed rule has not been promulgated and may not survive the final draft.

When Rule 9020 was originally promulgated by the Supreme Court in 1973, Justice Douglas objected to extending the contempt power to bankruptcy referees as "administrative arms of

the bankruptcy court." 411 U.S. 989, 994, 93 S.Ct. 3081, 37 L.Ed.2d xxxi (1973). Since 1978, of course, bankruptcy judges have been excluded from all administrative functions of the Court.

5. But see *Liberis v. Craig,* 767 F.2d 920 (6th Cir.1985), an unpublished decision of the Court of Appeals for the Sixth Circuit affirming a contempt order by the Bankruptcy Court for the Eastern District of Tennessee. See *In re Crabtree,* 60 B.R. 147, 149 (Bkrtcy.E.D.Tenn.1986).

sary or appropriate to effectuate the congressionally-created rights at the core of the bankruptcy scheme. A majority of the Supreme Court had declared in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*) that the statute authorizing the bankruptcy court to entertain "a 'traditional' state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an 'Article III court' if it is to be heard by any court or agency of the United States ..." *Marathon* at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting), compare *Marathon* at 91, 102 S.Ct. at 2881 (Rehnquist, J., concurring) [6].

In response to the decision in *Marathon,* in 1984 the legislature empowered the District Courts to refer bankruptcy cases and proceedings to or withdraw them from bankruptcy judges, distinguishing core bankruptcy proceedings, in which the bankruptcy judge may enter a final order, from non-core proceedings, in which the judge may not. 28 U.S.C. section 157. The Courts of Appeal have upheld the constitutionality of such a bankruptcy scheme. See, e.g., *In re Kaiser,* 722 F.2d 1574, 1580–81 (2d Cir.1983) (upholding the scheme under the emergency bankruptcy rule). Since the District Court decides whether to refer bankruptcy cases to the bankruptcy judge and may at any time, in whole or in part, withdraw the reference, the District Court retains "the essential attributes of judicial power." See *Marathon,* 458 U.S. at 77, 102 S.Ct. at 2874 (plurality opinion).

As Justice O'Connor, writing for a majority of six justices, recently observed in *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. ——, ——, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409, 422 (1985):

The Court's holding in [*Marathon*] establishes only that Congress may not

vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review. 458 US, at 84, 73 L Ed 2d 598, 102 S Ct 2858 (plurality opinion); id., at 90–92, 73 L Ed 2d 598, 102 S Ct 2858 (opinion concurring in judgment); id., at 92, 73 L Ed 2d 598, 102 S Ct 2858 (Burger, C.J., dissenting).

The authority of a bankruptcy court to adjudicate, render final judgment, and issue binding orders in disputes at the core of bankruptcy is not affected by the decision in *Marathon.* Indeed, as the Court declared in *Thomas,* upholding a statutory scheme assigning judicial functions to arbitrators subject to only limited review by Article III judges:

Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.

*Thomas,* —— U.S. at ——, 105 S.Ct. at 3340, 87 L.Ed.2d at 428. It is clear to us that Congress, in the proper exercise of its authority under Article I, has invested bankruptcy judges with the power to issue and effectuate orders in core proceedings referred and not withdrawn by the district courts. The civil contempt power exercised by a bankruptcy judge under these circumstances is warily tailored at least to meet and probably to exceed constitutional requirements. For the power is, first, derived by reference from the Article III court; second, exercised only *within* core proceedings; and third, subject to appellate review by an Article III judge.

The holding in *In re Cox Cotton Co.,* 24 B.R. 930, 947, 9 B.C.D. 1176 (E.D.Ark. 1982), vacated on other grounds sub nom.

6. That the Supreme Court could not reach a clear consensus about bankruptcy is not new in our Nation's history. Joseph Story in his COMMENTARIES on the Constitution of the United States, 5th Ed., in section 1111 states: "What laws are to be deemed bankrupt laws within the meaning of the Constitution has been a matter of much forensic discussion and argument."

*Lindsey v. Ipock,* 732 F.2d 619 (8th Cir.), cert. denied sub nom. *Cryts v. French,* —— U.S. ——, 105 S:Ct. 247, 83 L.Ed.2d 185, (1984), that the power of civil contempt is an inseparable attribute of the judicial power of the United States that may never be delegated mistakenly assumes that *any* attribute that can be characterized as "judicial" is beyond the authority of an Article I court. The characterization of the power as judicial in nature does not end the inquiry. *Better Homes of Virginia v. Budget Service Co.,* 52 B.R. 426, 430, 13 B.C.D. 454, 13 C.B.C.2d 377 (E.D.Va.1985). Since the power to issue and enforce final orders in core proceedings is now subject to the structure established in 28 U.S.C. section 157, the essential attributes of judicial power are preserved in an Article III court. Moreover, the conclusion that the power of civil contempt is "a non-severable attribute" of the judicial power, *Cox* at 947, only reinforces the argument that the power to effectuate a decision in a core proceeding is a concomitant of the power finally to decide the proceeding in the first instance.

There is no more traditionally judicial function than issuing final orders deciding legal controversies. If it is constitutional for bankruptcy judges to issue final orders adjudicating core bankruptcy proceedings subject to the control of an Article III court under 28 U.S.C. section 157, issuing civil contempt orders to effectuate such orders in core proceedings under 11 U.S.C. section 105(a) is likewise constitutional. We cannot hold that delegating the power to coerce compliance with an order in a core proceeding is an unconstitutional invasion of an exclusively judicial prerogative of Article III courts while delegating the power to resolve the dispute and issue the order in the first place is not.

Nor are we persuaded by concerns that delegating the civil contempt power to judges that lack lifetime tenure violates the separation of powers and threatens the independence and integrity of the federal judiciary. *Cox,* 24 B.R. at 950–951. In view of the adjunct status and derivative jurisdiction of the bankruptcy court, the only conceivable danger of a 'threat' to 'independence' of the bankruptcy judge comes from within, rather than without, the judicial department. *United States v. Raddatz,* 447 U.S. 667, 685, 100 S.Ct. 2406, 2417, 65 L.Ed.2d 424 (1980) (Blackmun, J., concurring). Compare *Marathon,* 458 U.S. at 79, n. 30, 102 S.Ct. at 2875, n. 30 (approving Justice Blackmun's reasoning in *Raddatz*).·

Were we to sever the "non-severable" relation of the power to effectuate orders in core proceedings from the power to issue such orders, finding its exercise unconstitutional, we should then be required to declare certain coercive features of the bankruptcy scheme unconstitutional as well. Sanctions, such as those imposed under Bankruptcy Rule 7037 for the failure to comply with a discovery order, or the award of attorney's fees to a prevailing party, *In re Crabtree,* 60 B.R. 147, 150 (Bkrtcy.E.D.Tenn 1986), are, despite the label, conceptually indistinguishable from a civil contempt award to compensate a party for the injury resulting from the contemnor's noncompliance. See *United States v. United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). What is more, the rift would affect the most critical provisions of the Bankruptcy Code. Sanctions for violating the automatic stay of 11 U.S.C. section 362 or the post-discharge injunction of 11 U.S.C. 524 have traditionally been regarded as sanctions for contempt of court. See, e.g., *In re Stonegate Security Services, Ltd.,* 56 B.R. 1014, 1019 (N.D. Ill.1986); *Better Homes of Virginia v. Budget Service Co.,* 52 B.R. 426, 431, 13 B.C.D. 454, 13 C.B.C.2d 377 (E.D.Va.1985); *In re Taylor,* 59 B.R. 197, 198 (Bkrtcy.M.D. La.1986). Similarly, a violation of 11 U.S.C. section 366, restricting when a utility may discontinue service to a debtor, has been treated as contempt. *Matter of Sayman's, Inc.,* 15 B.R. 229, 8 B.C.D. 443, 5 C.B.C.2d 615 (Bkrtcy.N.D.Ga.1981). The authority to enforce orders under these statutory or regulatory provisions follows

in the wake of the delegated authority to issue such orders.

Finally, the theoretical possibility of "immediate recourse to Art. III courts to enforce compliance," *In re Omega Equipment Corporation*, 51 B.R. 569, 573, 13 C.B.C.2d 371 (D.D.C.1985), cannot render the exercise of enforcement power by a bankruptcy court under 11 U.S.C. section 105(a) unconstitutional. The effective administration of the Bankruptcy Code requires that legitimate orders of the bankruptcy court in core proceedings be accorded dignity and respect and be enforced with dispatch and assurance. To eviscerate the bankruptcy judges' power to effectuate crucial provisions of the Bankruptcy Code, assigning this task instead to an already overburdened district court, would only serve to create a partitioned and diminished bankruptcy system.

We hold that, subject to the control and review of the district court, a bankruptcy court may exercise the power of civil contempt in order to coerce compliance with lawful orders in core proceedings. Accordingly,

We ORDER that the debtor turn the five thousand dollars ($5000.00) deposit it received for the sale of estate property over to the trustee of the debtor in possession within ten days of this date. Should the debtor fail to turn the $5000.00 deposit over to the trustee within ten days, in order to coerce compliance with this Order, we further ORDER that the debtor's officers personally pay one hundred dollars ($100.00) to the estate for each day thereafter that the debtor continues to withhold the money.